Thomas WEBER, Plaintiff,

v.

Caspar WEINBERGER, Secretary, Department of Defense, and Verne ORR, Secretary, Department of the Air Force, Defendants.

No. K83–644.

United States District Court,
W.D. Michigan, S.D.

Jan. 29, 1987.

William L. Coash, Legal Services Organization of Southcentral Mich., Battle Creek, Mich., Barton F. Stichman, M.G. Diamond, Dianne E. Dusman, Julia Trotter, Washington, D.C., for plaintiff.

Anne Vandermale Tuuk, U.S. Asst. Atty., Grand Rapids, Mich., Alex Nicholas, Gen. Litigation Div., Office of J.A.G., Washington D.C., for defendants.

## OPINION

ENSLEN, District Judge.

The plaintiff in this case is a former enlisted member of the United States Armed Forces. He served on active duty in the Air Force from October 24, 1960 until September 27, 1963. At that time, he was separated with a general discharge, under honorable conditions, for "unsuitability" under the provisions of former Air Force Regulation 39–16, 1959. Under this Regulation, an airman could receive an administrative discharge for unsuitability for "character and behavior disorders, disorders of intelligence, and transient personality disorders." AFR 39–16, Section "A," paragraph four.

It is important to understand the distinction between an administrative discharge for unsuitability due to character or behavior disorders and a medical discharge for "unfitness" due to physical disability. While an airman with a character or behavior disorder is considered "qualified" for duty, he is not considered suitable.

Further, while a psychiatric diagnosis of psychosis or psychoneurosis would constitute a physical disability for purposes of medical discharge, AFR 35–4, Section "N," paragraphs one and two, 1969, an express diagnosis of a character or behavioral disorder would not render one medically unfit. AFR 39–16, Section "A," paragraph three.

Under AFR 39–16, Section "B," paragraph 8c, 1959, an airman who was being processed for a proposed administrative separation for unsuitability would be examined by a medical officer, presumably untrained in psychiatry, who would determine whether any medical or physical disability existed which would warrant action under AFR 35–4.

Only if the medical officer found evidence of mental illness, as opposed to character or behavior disorders, would a consultation be arranged with a qualified psychiatrist. In this event, further processing under 39–16 would be held in abeyance pending a final determination of the airman's fitness for duty.

The distinction between a medical and an administrative discharge is an important one. An airman who receives a medical discharge is ordinarily entitled to benefits not available to one administratively discharged. Further, the applicable regulations insist that the quality of the discharge, for example, honorable, general, less than honorable, etc., is to be determined solely by the character of service and not influenced by the reason for discharge, for example, medical or administrative. See AFR 35–4, paragraph 4–15(b), 1960; AFR 39–16, Section "A," paragraph three, 1959. However, plaintiff has offered statistical compilations for selected years that strongly suggest that such directives may not have been followed in practice.

For the time period between October 1979 and September 1981, fully 100 percent of the 1,682 airmen separated for physical disability received honorable discharges while more than twenty percent of the 2,077 airmen administratively separated for unsuitability due to personality disorders received general discharges. See plaintiff's Exhibit No. "G."

If you go back to the ten years between 1967 and 1976, the rate of general discharges for airmen administratively separated for unsuitability ranged from twenty-five percent to fifty percent. See plaintiff's Exhibit No. "I."

What follows is a brief chronological summary of the salient facts of this case.

In 1963, plaintiff was discharged. In 1970, plaintiff first applied to the Veterans Administration for benefits. That application was denied.

In 1973, a fire at the National Personnel Records Center destroyed many of the records relating to plaintiff's 1963 discharge. In 1982, plaintiff filed an application with the Air Force Board for Correction of Military Records (AFBCMR) requesting that his discharge be "changed to medical."

In April of 1983, the AFBCMR notified plaintiff that relief had been denied. On November 22, 1983, plaintiff filed his initial complaint in this Court. The original complaint contained two counts. Each count directly challenged his 1963 discharge. At a hearing which took place on November 13, 1984, I found that plaintiff's cause of action challenging a discharge from military service was time-barred and granted defendants' motion for summary judgment to that extent. However, I also granted plaintiff's motion to amend his complaint and ruled that neither latches nor the six-year statute of limitations set forth in 28 U.S.C. § 2401(a) bars plaintiff's challenge under the Administrative Procedures Act (APA) to the AFBCMR decision denying him relief.

On February 27, 1985, defendants filed a second motion to dismiss or, in the alternative, for summary judgment. Defendants again argued that the claim was time-barred because plaintiff challenged the substance of the AFBCMR decision and not the procedures used to arrive at its decision. Defendants also argued that the court lacked subject matter jurisdiction because the complaint sought monetary relief from the United States in excess of $10,000 and that such claims must be brought in the United States Claims Court. Defendants also advanced a series of arguments which can, in summary, be characterized as asserting that the AFBCMR's conclusion that the Air Force physicians who diagnosed plaintiff as having a character and behavior disorder were psychiatrists was not arbitrary or capricious or unsupported by substantial evidence. See Defendants' Memorandum at 11–12.

In June of 1985, plaintiff responded with a cross-motion for summary judgment. Some five weeks later defendants filed a seventeen page memorandum in opposition to plaintiff's cross-motion for summary judgment and a reply brief to plaintiff's opposition to defendants' motion for summary judgment.

In August 1985, plaintiff filed a reply memorandum. Plaintiff also filed an affidavit which unequivocally indicated that plaintiff did not seek monetary relief thereby eliminating further litigation on the issue of subject matter jurisdiction.

Two months later, defendants filed another memorandum again arguing that the Court should ignore plaintiff's waiver of monetary relief as a "new attempt to manipulate jurisdictional facts." Defendants' Supplemental Memorandum at 3. The Court notes that in this case defendants have filed six separate memoranda of law total totalling some 53 pages and one affidavit consisting of four pages. Plaintiff has filed seven memoranda of law totalling 84 pages and seven affidavits totalling 23 pages.

The Court finally heard oral argument on February 5, 1986 and ruled from the bench on the cross-motions for summary judgment. The Court ruled that it had subject matter jurisdiction. See Transcript of Ruling of the Court (Tr.) at 8. The Court reaffirmed its November 1984 rulings insofar as it held that plaintiff's cause of action accrued when the AFBCMR denied him relief in 1983 and that the present action is not barred by laches. *Id.* at 8–12 and 12–13. The Court rejected defendants' argument that the AFBCMR's decision be subjected to a narrow, solely procedural review.

On the merits, the Court found "that the AFBCMR's finding that plaintiff was evaluated by a properly trained psychiatrist is completely without support in the record." *Id.* at 15. The Court concluded upon reviewing the AFBCMR decision under traditional APA standards that "the decision of

the AFBCMR ... was arbitrary, capricious and not supported by substantial evidence." *Id.* at 16. Thus the Court denied defendants' motion for summary judgment, granted plaintiff's motion for summary judgment in part, and remanded the case to the AFBCMR for reconsideration in light of the oral opinion rendered on February 5, 1986.

The case is presently before the Court on plaintiff's motion for attorney's fees, costs, and expenses pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d).

*EAJA*

EAJA was originally enacted in 1980. Portions of EAJA were enacted as a three-year experiment and expired on September 9, 1984. Subsequently, certain EAJA amendments were enacted on August 5, 1985. EAJA amendments extended certain provisions which had expired on September 9, 1984. More important, the amendments clarified and amended the Act and made the Act, as amended, permanent.

28 U.S.C. § 2412(d)(1)(A) now provides: Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort, including proceedings for judicial review of agency action) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

Plaintiff asserts that he satisfies each of the three statutory requirements for an award of fees, costs, and other expenses. First, plaintiff argues that he is a prevailing party. Plaintiff notes that EAJA subsection 2412(d)(2)(B) defines "party" to mean "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed." Plaintiff affirms that his net worth was far below the statutory ceiling. See Affidavit of Williams L. Coash

at ¶ 5. In his original motion for an award of attorney's fees plaintiff merely asserted that he "had prevailed." In plaintiff's reply to defendant's opposition to plaintiff's motion, plaintiff expanded upon that assertion. I will address those arguments in due course.

Second, plaintiff asserts that this is a non-tort civil action brought against the United States. EAJA subsection 2412(d)(2)(C) defines "United States" to include "any agency and any official of the United States acting in his or her official capacity."

Third, plaintiff makes a series of factual and legal arguments to support his assertion that the position of the United States in this case was not "substantially justified."

The Government does not object to plaintiff's assertion that he has satisfied the second statutory requirement of EAJA: that this be a non-tort civil action brought against the United States. Neither does the Government contest that plaintiff is a "party" within the meaning of EAJA. However, the Government does make four separate arguments as to why plaintiff is ineligible to receive attorneys' fees under 28 U.S.C. § 2412(d).

First, the Government argues that plaintiff's motion is untimely. Second, the Government argues that plaintiff is not a *prevailing* party within the meaning of EAJA. Third, the Government argues that its own position was "substantially justified" within the meaning of EAJA. Fourth, the Government argues that "special circumstances" exist which preclude the awarding of any attorney's fees.

Taken as a whole, the Government's arguments can be characterized as variations on a single theme: that the concept of sovereign immunity commands this Court to construe EAJA so narrowly as to preclude payment of costs and expenses to plaintiffs who may have only "partially" prevailed on their claims against the United States Government.

But EAJA is fashioned from a contrary premise. EAJA recognizes that the "King" can do and indeed does do—on occasion at least—wrong. Indeed, its principal concern, as clarified and reinforced by the 1985 amendments, is to actually encourage common citizens to present and pursue their grievances against the King by allowing for the recovery of litigation expenses when the underlying decision-making process which formed the basis of the wrongful acts of the sovereign or his agent is not substantially justified.

The 1985 legislative history, for example, specifically disapproved *Auke Bay Concerned Citizen's Advisory Council v. Marsh,* 755 F.2d 717 (9th Cir.1985), *withdrawn,* 779 F.2d 1391 (9th Cir.1986). *See* H.R.Rep. No. 99–120, Pt. I, 99th Cong., 1st Sess. 18 n. 26, reprinted in 1985 U.S.Code Cong. & Admin.News 132, 146 n. 26. In *Auke Bay,* the Ninth Circuit originally held that because waivers of sovereign immunity are to be strictly construed, a fee petition filed before the thirty-day jurisdictional requirement even began to run was for that reason untimely. The House Report notes that the Ninth Circuit subsequently found the fee application timely in *Auke Bay Concerned Citizen's Advisory Council,* 779 F.2d 1391 (9th Cir.1986).

Moving beyond legal metaphor into the more concrete world of codification, the Court notes that the purpose of the EAJA, originally enacted in 1980, was

> [t]o expand the liability of the United States for attorneys' fees and other expenses in certain administrative proceedings and civil actions. The primary purpose of the Act was to ensure that certain individuals ... will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expenses involved in securing the vindication of their rights.

H.R.Rep. No. 120, 99th Cong., 1st Sess. 4, *reprinted in* 1985 U.S.Code Cong. & Admin.News 132. *See also Kreimes v. Department of Treasury,* 764 F.2d 1186, 1190 (6th Cir.1985) ("purpose of EAJA is to reward litigants 'expenses of seeking review of or defending against unreasonable Government action ...' "). (citation omitted).

I will now respond to each of the Government's four arguments separately.

*The Timeliness of Plaintiff's Motion*

■ EAJA provides that "a party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees...." 28 U.S.C. § 2412(d)(1)(B). The Government argues that plaintiff's motion was not filed within thirty days of "final judgment" as that phrase is used in EAJA.

Specifically, the Government argues that the term "final judgment" means an appealable judgment issued by the district court. Plaintiff argues that " 'final judgment' means a judgment which is final in the sense that it either has already been appealed to the extent possible or is no longer subject to appeal." See Plaintiff's Reply Brief at 1. I believe plaintiff is correct.

In the case *sub judice,* this Court's judgment order denying defendants' motion for summary judgment and granting plaintiff's cross-motion for summary judgment was filed on February 10, 1986. Pursuant to Fed.R.App.P. 4(a)(1) defendants had sixty days from the date of entry of this Court's judgment within which to file a notice of appeal. The Court therefore calculates that defendants had until April 11, 1986, to file a notice of appeal. (The Court's February 10, 1986 judgment became "final" on April 12, 1986, when the time within which to appeal expired.) Since plaintiff's motion for fees was filed on May 9, 1986, it was filed some 26 days after defendants' time within which to appeal had expired and was therefore timely.

The Court notes that the Government's position is followed only by the Ninth Circuit. *See McQuiston v. Marsh,* 707 F.2d 1082 (9th Cir.1983). The majority of jurisdictions follows the position set forth by the plaintiff. *See Feldspausch v. Heckler,* 763 F.2d 229 (6th Cir.1985).

Moreover, when Congress reenacted and amended EAJA in 1985, it unequivocally indicated that it is the majority rule—the rule followed in the Sixth Circuit—and not the rule set forth by the Government that is an accurate reflection of the intent of Congress. The House Report states:

> . . . if the Government does not appeal an adverse decision, the thirty-day period would begin to run upon expiration of the time for filing the notice of appeal or petition for certiorari. Thus appealable orders include all discretionary appeals and includes writs of certiorari.

House Report at 18, 1985 U.S.Code Cong. & Admin.News at 146, n. 26. It is clear that plaintiff's motion was filed within thirty days of final judgment in this action within the meaning of EAJA and is therefore timely.

*Prevailing Party*

■ The Government relies on *Watkins v. Mobile Housing Bd.*, 632 F.2d 565, 567 (5th Cir.1980) ("prevailing party" test within the meaning of the Civil Rights Attorney's Fees Act of 1976, 42 U.S.C. § 1988 is whether he or she has received substantially the relief requested or has been successful on the central issue) to support its proposition that plaintiff is not a "prevailing party" within the meaning of EAJA.

It is beyond argument that the threshold standard of "prevailing party" set forth in the more recent Supreme Court decision of *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) is controlling in this case. In *Eckerhart*, the Court held:

> [p]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit. (citations omitted). This is a generous formulation that brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is reasonable.

*Accord, Kreimes v. Department of Treasury*, 764 F.2d 1186, 1188–89 (6th Cir, 1985) (quoting the language in *Eckerhart* as controlling in an EAJA case).

■ Applying this standard, the Court finds that plaintiff "prevailed" within the meaning of a "prevailing party" established by *Eckerhart*.

At the hearing held on February 5, 1986, this Court found that the AFBCMR's decision was arbitrary, capricious, and unsupported by substantial evidence. It is true that I did not expressly mandate that the AFBCMR correct plaintiff's records to an honorable or medical discharge. However, I did find that "the AFBCMR's finding that plaintiff was evaluated by a properly trained psychiatrist is completely without support in the record." Tr. at 15. Moreover, given the fact that the plaintiff demonstrated that Dr. Anderson, Dr. Hohl, and Dr. Yanez—the three physicians cited by the AFBCMR—were not physicians trained in psychiatry and psychiatric diagnoses, and given the fact that there was no psychiatric examination record attached to the "newly discovered" SF 88 form, it is hard to see how on remand the AFBCMR applying the consent standards of *Lipsman v. Brown*, No. 76–1175 (D.D.C.1978) can do anything but correct plaintiff's discharge to that of honorable or to a medical discharge—precisely the alternative corrective action plaintiff requested. *See Continental Web Press, Inc. v. N.L.R.B.*, 767 F.2d 321, 323 (7th Cir.1985) (J. Posner noting that under EAJA, "[a] party 'prevails' if he wins a substantial part of what he sought. He doesn't have to win everything he originally sought; the average winning plaintiff does not . . .").

The Court emphasizes, however, that plaintiff has, in any event, already demonstrated that he is a "prevailing party" by virtue of the fact that this Court found the AFBCMR's decision arbitrary, capricious, and unsupported by substantial evidence. As I indicated in my ruling on February 5, 1986, defendants' characterization that plaintiff received only partial summary judgment; that is, that plaintiff did not prevail on every single issue, was "splitting hairs." Tr. at 19.

*Was the position of the United States substantially justified?*

■ Defendants argue that the Court should consider only their litigation position in determining what was "substantially justified." The Government further argues that the legislative history, provisions, and case law under the original EAJA control this case, and that the August 5, 1985 Amendments to EAJA do not apply since this case was not "pending ... on or after the" (effective) date of the new EAJA within the meaning of Section 7(a) of Pub.L. No. 99–80, 99 Stat. 186. See Def. Memo in Opp. at 6.

In support of its "substantial justification" argument, defendants rely heavily on a pre–EAJA Sixth Circuit case, *Trident Marine v. District Engineer, The United States Army Corps of Engineers, Detroit District,* 766 F.2d 974, 977–80 (6th Cir. 1985) (holding that the "position of the United States" refers only to the Government's litigating position).

The Court believes that the 1985 EAJA Amendments unequivocally clarified the congressional intent as to "the position of the United States." Indeed, one of the very purposes of the amendments was to reject defendants' arguments which had been adopted by other courts. First, the House Report noted:

> ... in clarifying the "position" [of the United States] term, the Committee expressly rejects the holding ... that the only Government "position" to be scrutinized in the context of an EAJA case is that taken in the litigation itself....

> The Committee's clarification of the "position" term is intended to broaden the court's ... focus of inquiry for EAJA purposes beyond mere litigation arguments, and to require an assessment of those Government actions that formed the basis of the litigation ...

> In cases where the private party is a prevailing plaintiff, the definition of "position" of the United States ..." will likely include an assessment of the agency action or failure to act that forms the basis of the party's cause of action....

House Report at 12–13, 1985 U.S.Code Cong. & Admin.News 132, 140–41 (citations and footnotes omitted).

Recent decisions from other courts confirm that Congress has "explicitly overrule[d] the position enunciated in *Trident Marine v. District Engineer, The United States Army Corps of Engineers, Detroit District,* 766 F.2d 974, 977–80 (6th Cir. 1985)." *Holden v. Heckler,* 615 F.Supp. 686, 687 (N.D.Ohio 1985), *See also Gotches v. Heckler,* 782 F.2d 765 (7th Cir.1986) ("[t]he new definition declares that not only the Government's litigation position but also its position with respect to the original Government action which gave rise to the litigation must be considered in determining whether the Government's position is 'substantially justified.' "); *Cf., Gavette v. Office of Personnel Management,* 785 F.2d 1568, 1579 (Fed.Cir.1986, *en banc* ) (holding that "substantially justified" means that the Government must establish that its position in court and at the agency level was clearly reasonable).

The Government, of course, argues that the 1985 Amendments are not applicable here because this action commenced on December 14, 1983. Other courts have specifically held that Congress intended that changes made by the 1985 reenactment control the meaning of the "position of the United States," and that because those provisions merely clarify existing law, they are to be given retroactive effect. More important, such changes apply to matters which were pending on or commenced on or after October 1, 1981. *See Russell v. National Mediation Board,* 775 F.2d 1284 (5th Cir.1985). *See also Gotches v. Heckler,* 782 F.2d 765 (7th Cir.1986); *Center for Science in the Public Interest v. Regan,* 802 F.2d 518 (D.C.Cir.1986); *Trahan v. Regan,* 625 F.Supp. 1163 (D.D.C.1985) (plain meaning of "cases pending" includes pending fee applications). In the instant case it is clear that both the merits *and* the fee application portions of this litigation were pending on August 5, 1985 (the date of the enactment of the EAJA Amendments).

Finally, the Government argues that even if this Court finds—which it has—that the amended EAJA governs, the Court should apply the "reasonable or slightly more than reasonable test in determining whether the Government's underlying agency position was substantially justified." Defendants' Memo. in Opp. at 7. *See e.g., Russell v. National Mediation Board,* 775 F.2d 1284 (5th Cir.1985). The Government contends, of course, that under this test the Court must find that the Government's position was substantially justified.

Plaintiff argues that the 1985 EAJA Amendments establish the meaning of the term "substantially justified." The House Report said:

> Another problem which was developed in the implementation of the Act has been the fact that courts have been divided on the meaning of the term "substantial justification." *Several courts have held correctly that "substantial justification" means more than merely reasonable.* Because in 1980 Congress rejected a standard of "reasonably justified" in favor of "substantially justified," the test must be more than mere reasonableness.
>
> Especially puzzling, however, have been statements by some courts that an administrative decision may be substantially justified under the Act even if it must be reversed because it was arbitrary and capricious or was not supported by substantial evidence. *Agency action found to be arbitrary and capricious or unsupported by substantial evidence is virtually certain not to have been substantially justified under the Act. Only the most extraordinary special circumstances could permit such an action to be found to be substantially justified under the Act.*

House Report at 9–10, 1985 U.S.Code Cong. & Admin.News, P. 138 (footnotes omitted) (emphasis added).

It is true that the Fifth Circuit stated in *Russell* that comments of co-sponsors Rep. Kindness and Senator Thurmond made during the floor debates conflicted with the apparently unequivocal language of the House Report cited above. The Fifth Circuit found the juxtaposition inexplicable and concluded that the "legislative history [was] conflicting and inconclusive" and for that reason opted for the reasonableness standard it had fashioned in a *pre–EAJA Amendment case.* This approach of following a reasonableness standard fashioned prior to the amended Act in determining whether or not the Government's position was substantially justified has also been followed by the Tenth Circuit which adopted and applied its former standard without discussion. *See Fulton v. Heckler,* 784 F.2d 348 (10th Cir.1986).

As I have previously noted with respect to Sixth Circuit decisions such as *Trident,* pre–EAJA Amendment cases appear less than authoritative on the issue of what test to apply in determining whether or not a Government action is "substantially justified"—precisely because they *are* pre-EAJA amendment cases. I have also noted that Congress unequivocally sided with the "minority" position of the courts in amending the temporary provisions of the EAJA so as to clarify the "position of the United States."

It is true that in pre–EAJA amendment cases the majority position—which includes that of the Sixth Circuit as set forth in *Trident*—was that the Government's position must be reasonable in order to avoid being assessed EAJA fees. Of course in the present case the Government admits that other courts have also used a pre–EAJA standard of slightly more than reasonable. *See e.g., Martin v. Lauer,* 740 F.2d 36, 43 (D.C.Cir.1984). *See also Wolverton v. Schweiker,* 533 F.Supp. 420 (D.Idaho 1982) (pre–EAJA Amendment case holding that proper test to apply in determining whether or not the Government's position was substantially justified is one of slightly more than reasonableness). Still other courts used a "bad faith" test. *See Estate of Berg v. United States,* 231 Ct.Cl. 466, 687 F.2d 377, 383 (1982). In enacting the 1985 Amendments, however, it

appears that Congress again chose to adopt another "minority" position by adopting the D.C. Circuit's position that " 'substantial justification' means more than merely reasonable." H.R.Rep. No. 120, pt 1 99th Cong., 1st Sess. 9 (1985), 1985 U.S.Code Cong. & Admin.News, p. 138.

Accordingly, some post–EAJA amendment cases have required a higher standard than mere reasonableness. In *Gavette, supra,* the D.C. Circuit held that "substantially justified" means that the Government must establish that its position in court and at the agency level was *clearly* reasonable. (emphasis added).

It is not clear whether the Sixth Circuit would at this point follow the approach taken by the Fifth and Tenth Circuits and rely on its pre–EAJA amendment "reasonableness" test, or whether it would adopt the approach suggested in the House Report and followed in the D.C. Circuit of requiring something more than reasonableness. While I believe the proper test may require that the Government's position be something more than merely "reasonable," under the facts of this case I do not believe that the Government's position can pass even the reasonableness test.

It is true that some courts in pre–EAJA Amendment decisions have held that a final agency decision which is not supported by substantial evidence does not for that reason raise a *presumption* that the Government's position was not substantially justified. *See Dunn v. Heckler,* 614 F.Supp. 45 (E.D.N.C.1985). *See also Bennett v. Schweicker,* 543 F.Supp. 897 (D.D.C.1982).

Other courts, however, have held that the Government's position was not substantially justified where the agency's position is challenged by overwhelming contradictory evidence or where the agency's position is unsupported by substantial evidence. *See Kauffman v. Schweiker,* 559 F.Supp. 372 (M.D.Pa.1983); *Hornal v. Schweiker,* 551 F.Supp. 612 (M.D.Tenn. 1982).

The Court is well aware that the substantial evidence inquiry and the substantial justification inquiry are separate and distinct inquiries and that where there is at least *some* evidence to support the Government's position it is *possible* that the Court could find the Government's actions in contesting a claim to be "reasonable" and for that reason substantially justified. *See e.g., Kerr v. Heckler,* 575 F.Supp. 455 (S.D. Ohio 1983).

However, in the instant case the Court has made the following factual findings: 1) none of the three named physicians was trained in psychiatric diagnosis, yet the medical reports of the plaintiff reviewed by the AFBCMR referred to four different "psychiatric" evaluations performed by these doctors; 2) while the Board's decision made reference to four additional "psychiatric evaluations" in 1962–1963, it made no reference to the treating physician and upon my own review of the record I could find no evidence that any of these "psychiatric evaluations" were conducted by a physician trained in psychiatry or psychiatric diagnoses; 3) although the AFBCMR was not compelled to hear plaintiff's application or apply the *Lipsman* standard, once it did, it subjected its decision to review under traditional APA standards. Accordingly, I found that the decision of the AFBCMR was arbitrary, capricious, and not supported by substantial evidence.

The legislative history indicates that the substantial justification test is one which must be "decided on a case-by-case basis due to the wide variety of factual contexts and legal issues which make up Government disputes." H.R.Rep. No. 120, pt 1, 99th Cong., 1st Sess. 10 (1985), 1985 U.S. Code Cong. & Admin.News, p. 138. I have also emphasized that the legislative history suggests that where an agency action is tested under a deferential standard of review and is subsequently set aside as arbitrary and capricious or not supported by substantial evidence, the Government's position can rarely be said to be "substantially justified."

Finally, it is clear that with respect to an application for attorney's fees the Government has the burden of showing that its position was substantially justified. *See*

*Foley Constr. Co. v. U.S. Army Corps of Engineers,* 716 F.2d 1202 (8th Cir.1983); *United States v. Yoffe,* 775 F.2d 447 (1st Cir.1985) (holding that Government must prove substantial justification by a preponderance of the evidence); *Kennedy v. United States,* 542 F.Supp. 1046 (D.N.H.1982) (burden on Government to prove either substantial justification or special circumstances). Under the facts of this case the Government has not met its burden of demonstrating that the underlying agency's actions were reasonable and hence, substantially justified.

*The Special Circumstances Test under EAJA*

■ The legislative history of the original Act emphasized that the "special circumstances" test is primarily a "safety valve" and gave as an example of a special circumstance the situation where a fee *petitioner* unreasonably protracts the litigation. *See* H.P.Rep. No. 1418, 96th Cong., 2d Sess. 13 (1980), 1980 U.S.Code Cong. & Admin.News, p. 4953. The House report also noted:

> [the special circumstances exception] ... helps to insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts. It also gives the court discretion to deny awards where equitable considerations dictate an award should not be made.

*Id.* at 11, 1985 U.S.Code Cong. & Admin. News at 4990.

Finally, the Government once again argues that since the plaintiff has not achieved the ultimate relief he desires, an upgrade of his discharge status, plaintiff should be denied fees because there are "special circumstances [that] make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The Government relies on *Guthrie v. Heckler,* 587 F.Supp. 1471, 1474 (M.D.N.C.1984) for the broad proposition that a party which merely obtains a remand is not a prevailing party and is therefore not entitled to an award of fees.

The Court notes that *Guthrie* concerned the narrow issue of the proper use of the vocational grid by the H.H.S. Secretary in denying social security disability benefits. Moreover, other courts have concluded—in the same context—that obtaining a remand, that is, a ruling that an administrative decision is not supported by substantial evidence satisfied the prevailing party requirement under the EAJA. *See Haney v. Heckler,* 613 F.Supp. 12. *See also Bohn v. Heckler,* 613 F.Supp. 232 (N.D.Ill.1985) (plaintiff's actions in rebutting Secretary's position and thus re-establishing *prima facie* entitlement to benefits satisfies prevailing party test regardless of whether case is remanded to Secretary rather than reversed outright).

As a general matter it is true that the "special circumstances" test has been given a somewhat different treatment than the same test under the private attorney general statutes. It is also true that *Guthrie* found that because the law was unsettled in the area being litigated, special circumstances existed which merited denying an award of attorney's fees. While it is true that the statute of limitations defense might be characterized as "unsettled law" in this case, the Sixth Circuit—as well as other courts which have applied the private attorney general "special circumstances" test—have not recognized this unsettled law factor as a special circumstance. *See Northcross v. Board of Education,* 611 F.2d 624, 635 (6th Cir., 1979), *cert. denied,* 447 U.S. 911, 2999 & 3000, 64 L.Ed.2d 862 (1980).

Moreover, the special circumstances test has been applied under EAJA only rarely. The Court finds no "special circumstances" here that indicate that it should depart from that practice.

The Court notes that much of the Government's argument has evolved from the pre–EAJA amendment premise that the proper inquiry is on whether the Government's litigation position was substantially justified. While it is still true that Government attorneys may in general assert jurisdictional and technical defenses, the Fifth

Circuit has observed that " 'the amendment ... make[s] clear that the Congressional intent is to provide attorneys' fees when an unjustifiable agency action forces litigation, and the agency then rides [sic] to avoid such liability by reasonable behavior during the litigation.' " *Russell*, 775 F.2d at 1291 quoting H.R.Rep. No. 120 (pt. 1) at 11, 1985 U.S.Code Cong. & Admin.News at 140.

That the agency may have been "along for the ride" appears to be the situation here. Further, the Court has indicated that the Government's litigation position was not reasonable with respect to the defenses it raised during the course of this litigation. However, the Court notes that the specific question of whether or not a cause of action claiming an arbitrary and capricious administrative decision is independently maintainable *regardless of whether the underlying factual issues involved in a final agency decision occurred in a time period falling outside of the statute of limitations period for seeking review of the agency decision itself* was a hotly disputed legal issue which remained in a state of flux *at least* until January 1986. I noted as much in the oral opinion delivered on February 5, 1986. See Tr. at 12.

But even assuming that a portion of the Government's litigation position—at least on the statute of limitations issue—may have been "reasonable," that fact alone does not prevent the awarding of attorneys' fees where on the merits the underlying agency's position has been found to be arbitrary, capricious, and unsupported by substantial evidence. (In addition, where some but not all of the Government's defenses are substantially justified, some courts even in pre–EAJA Amendment decisions have still awarded attorney's fees to the prevailing party for attacking those defenses that are not reasonable. *See e.g., Goldhaber v. Foely,* 698 F.2d 193, 196–98 (3rd Cir.1983). *See also Martin v. Lauer,* 740 F.2d 36 (D.C.Cir.1984)).

■ Moreover, "[t]he statute defines 'position of the United States' to include both the litigation position *and* underlying action, without mentioning apportionment when the litigation position was substantially justified and the underlying action was not." *Russell,* 775 F.2d at 1291. *Accord Herring v. United States,* 781 F.2d 119 (8th Cir.1986) (granting an award for the entire suit where prelitigation position was not justified but litigation position was justified). The Court finds the *Russell* court's analysis well-reasoned and persuasive. Therefore, in computing the attorneys' fees the Court will consider the time spent presenting the entire case, not just the time spent contesting the Government's underlying action, or only the time spent attacking the Government's "unjustifiable" defenses.

■ In summary, the Court finds that plaintiff has satisfied each of the three statutory requirements for an award of fees, costs, and expenses. First, plaintiff is a prevailing party. Second, this is a nontort civil action brought against the United States within the meaning of EAJA. Third, the position of the United States in this case was not "substantially justified" nor are there any special circumstances present which would make an award unjust.

Having found that plaintiff is entitled to an award of attorneys' fees, it remains to calculate the appropriate award.

*Calculation of Attorneys' Fees under EAJA*

The Government makes three separate arguments in support of its position that the plaintiff's attorneys' rate and number of hours are excessive. First, the Government argues that plaintiff may not recover fees for fee litigation itself. Second, the Government argues that plaintiff's attorneys should not be compensated at a rate of over $75 per hour. Third, the Government makes various arguments as to why certain hours should be deemed excessive and/or unnecessary.

■ The Government's contention that plaintiff should not recover fees for time spent litigating the fee issue itself is of-

fered without any legal support. The Court is aware of a few pre–EAJA Amendment cases where time in preparing a fee application was not allowed. Some later cases suggest that plaintiff is entitled to an additional award of attorney's fees for the fee application itself only where the agency resists such an application without substantial justification. *See Continental Web Press, Inc. v. N.L.R.B.*, 767 F.2d 321 (7th Cir.1985). Still, the issue that fee litigation itself is compensable is well settled. *See e.g., Volpe v. Heckler*, 610 F.Supp. 144 (S.D.Fla.1985). Even if the Government were to argue against awarding of fees because part of its litigation position was "substantially justified," I have already explained that the statute defines "the position of the United States" to include both the Government's litigation position *and* the underlying agency's action or lack of action. The statute does not mention apportionment when the litigation position, or different aspects of the litigation position, may have been "substantially justified," but the underlying agency action was not. *See Russell*, 775 F.2d at 1291. I find the Government's argument, that plaintiff should not recover fees for time spent litigating the fee issue itself, unpersuasive.

The Government next argues that both Mr. Coash and Mr. Stichman should be compensated at a rate of $75 per hour, not at their requested rate of $120 per hour. The Government suggests that Mr. Coash's claim of expertise is not credible given the fact that early on in the course of this litigation he represented to the Court that he had "never been involved in this sort of litigation before." *See* May 2, 1985, Tr. at 3. The Government argues further that Mr. Stichman's rate should not be comparable to that of private attorneys, but rather his fees should be held to the statutory limit of $75 per hour since his office receives funds from the federal government.

In addition to Mr. Coash and Mr. Stichman, three other attorneys, Ms. Dusman, Ms. Trotter, and Mr. Diamond also worked on this case under the direct supervision of Mr. Stichman. These junior attorneys have submitted affidavits documenting the hours which they have spent—primarily drafting and researching litigation documents. The Government objects to the reasonableness of the total hours expended but not to the hourly rates submitted by these junior attorneys.

*The Lodestar*

It is clear that "[t]he initial task in determining an appropriate fee award ... is to establish the 'lodestar': the number of hours reasonably expended multiplied by a reasonable hourly rate." *National Ass'n of Concerned Citizens v. Secretary of Defense*, 675 F.2d 1319, 1323 (D.C.Cir.1982) (citation omitted). Accordingly, I will derive an hourly total and rate for each of the five attorneys who have worked on this case.

*Adjustment of the EAJA Rate*

██ It is true that unlike most other fee-shifting statutes, EAJA provides that "attorneys fees shall not be awarded in excess of $75 per hour unless the court determines that increases in the cost of living *or a special factor, such as the limited availability of qualified attorneys for the proceedings involved,* justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A) (emphasis added).

Plaintiff cites a congressionally mandated Legal Services Corporation Report which investigated whether low-income veterans such as plaintiff have "special difficulties getting access to legal services or special legal problems which are not being met." See Plaintiff's Motion for Attorney's Fees at 19 quoting Section 1007(h) of the Legal Services Corporation Act, 42 U.S.C. § 2996f(h). The report and legislative history identifies veterans who have been issued less than honorable discharges as among those low-income veterans who has [sic] the greatest unmet legal needs. *See* Plaintiff's Motion for Attny. Fees, Exhibit B at ¶ 3(c). Plaintiff argues that both Mr. Coash and Mr. Stichman are "experts in the area of law involved in this case." *Id.* at 19. Plaintiff concludes that the limited availability of attorneys with the qualifi-

cations of Mr. Coash and Mr. Stichman justifies the hourly rate requested.

Plaintiff also asserts that the contingent nature of the fee agreement (here counsel for plaintiff represented plaintiff without charging a fee except for the possibility of a court-awarded fee), the undesirability of the case, the results obtained, the quality of representation, and the delay in payment of fees are all special factors which other courts have recognized in authorizing an hourly rate in excess of the $75 per hour set forth under EAJA. *See e.g., Underwood v. Pierce*, 761 F.2d 1342, 1206 (9th Cir.1985).

The Court has considered carefully the affidavits of Mr. Coash and Mr. Stichman and the assertion that there are special factors present in this case which warrant awarding fees above the statutory maximum. The Court finds that Mr. Coash performed—on the whole—competently in this case. However, Mr. Coash's difficulties in the beginning of this litigation imply that his own "expertise" in this area was somewhat limited. The affidavit of Mr. Stichman indicates that he, Mr. Stichman, was responsible for preparing all of the documents submitted by plaintiff, with the exception of the initial and the first amended complaint which were drafted by Mr. Coash. *See* Aff. of B. Stichman at 4–5.

The Court recognizes that some of the defenses in this case presented complicated questions of law and fact, and that it was the type of case that may be fairly characterized as "less than desirable." However, the quality of Mr. Coash's representation was adequate but not exceptional. Further, I have noted that the results reached were significant—although plaintiff "technically" did not receive complete relief in that defendants were not expressly ordered to change the records to reflect a specific status. The Court finds that it is reasonable that Mr. Coash, as local counsel, receive attorney fees under the statutory maximum provided by EAJA in the absence of special factors. Therefore, Mr. Coash will be awarded attorney's fees at a rate of $75 per hour.

The Court notes, however, that the "limited availability of counsel provision" appears to be targeted to situations such as this one where the limited availability of qualified counsel justifies a higher award. The Government itself points out that Mr. Coash admittedly looked to Washington, D.C. "for guidance," ... "because that office ... [was] ... more experienced in this [type of] ... litigation." (Tr. of May 2, 1985, at 3–4). The Court finds that plaintiff's challenge of the AFBCMR's action as arbitrary and capricious under the facts of this case required the services of someone such as Attorney Stichman. The Government does not challenge Mr. Stichman's impressive credentials, nor his subject matter expertise. The Government argues, however, that Mr. Stichman's expertise counsels a reduction in the hours spent by his office on research and preparing motions and responses. The Court notes, however, that Mr. Stichman's expertise and efficiency may well have held costs down in this case. A substantial portion of the billable hours generated in this case was a direct result of the Government's litigation position. *See* Plaintiff's Motion for Fees, Ft. Nt. at 14–15. The Court finds that it is reasonable that Mr. Stichman be compensated at a rate above the $75 per hour maximum.

Mr. Stichman and Mr. Coash have introduced affidavits which indicate that the "prevailing market rate in the relevant community" for services of someone of Mr. Stichman's experience "range from $135 to $190 per hour." The Court finds that a rate of $120 per hour for Mr. Stichman, a figure suggested by Mr. Stichman, is reasonable. Under these circumstances, the upward adjustment of the $75 per hour figure is in no way incompatible with the provisions and purposes of EAJA.

The Government does not object to the hourly rates of the other attorneys involved in this case. Therefore, the hourly rates which will be used in computing the lodestar will be $75 per hour for Mr. Coash, Ms. Dusman, and Ms. Trotter. Mr. Stich-

man's rate will be $120 per hour, and Mr. Diamond will receive $60 per hour.

*Mr. Coash*

▇▇▇ Mr. Coash's affidavit indicates that his record of time spent is based on the records of the Legal Services Organization of Southcentral Michigan, his time records, and his personal recollection. The preferred method is, of course, to introduce copies of the hourly time sheets. Mr. Coash has introduced monthly summaries based on those time sheets and his "recollection." Reconstructing time sheets—but not merely estimating time—is an acceptable method. Mr. Coash indicates specific hours spent on specific assignments and duties on his affidavit.

The Court has carefully reviewed the time spent and cross-checked the documented activities with those of the other attorneys working on this case. The Court finds that there was minimal—if any—duplication. The Court notes further that Mr. Coash has exercised billing judgment and eliminated 18.50 hours from his total of 118.50. The Court finds this reduction reasonable and finds it difficult to improve upon his judgment. Mr. Coash has also submitted a bill of costs and expenses totalling $144.80 which appears reasonable and which is unchallenged by the Government.

Mr. Coash's attorney's fees are calculated as follows:

FEES: 100 hours times $75/hour equals $7,500.00
COSTS: $ 72.00 (transcript fees)
      $ 72.80 (Express Mail and Federal Express)
      $144.80

*Mr. Stichman*

I have carefully reviewed Mr. Stichman's affidavit and find that the hours expended by Mr. Stichman in this matter are reasonable. (The Court notes that it appears that a clerical error has misaligned the Nature of Work Column and the Month Column with respect to the research and preparation of plaintiff's motion in opposition to defendants' motion to dismiss. The Court also observes that although the total hours spent on preparing the fee application seem a little high, the Government's response in this case protracted the time necessary to complete the initial filing as well as the reply brief so that the amount of time spent by plaintiff appears to have been reasonably expended).

Mr. Stichman's attorney's fees are calculated as follows:

FEES: 99.75 hours times $120/hour equals $11,970.00
COSTS: $ 13.80 (photocopying)
      $ 72.80 (Federal Express)
      $ 86.80

*Mr. Diamond*

I have examined Mr. Diamond's affidavit in detail and note that the total number of hours reported, 221.50, appears excessive. However, Mr. Diamond has exercised billing judgment and has eliminated 50 hours from that total—a reduction of almost 23%. However, the Court finds that the total research and preparation time—as billable hours—to be excessive in this case by a factor of 40% and will thereby eliminate 88.6 hours from the raw total of 221.50 arriving at a final figure of 132.9 billable hours.

Mr. Diamond's attorney's fees are calculated as follows:

FEES: 132.9 hours times $60/hour equals $7,974.00

*Ms. Dusman*

Ms. Dusman indicates that she spent 23.75 billable hours researching and preparing plaintiff's memorandum in opposition to defendants' motion to dismiss or for summary judgment filed October 1984. The Court finds that these hours are reasonably billed.

Ms. Dusman's attorney's fees are calculated as follows:

FEES: 23.75 hours times $75/hour equals $1,781.25

*Ms. Trotter*

Ms. Trotter has billed 25.50 hours for the preparation of affidavits itemizing hours expended by counsel, research and proofing of plaintiff's motion. The Court finds that much of this work is essentially cleri-

cal and that it is somewhat excessive and shows a lack of billing judgment to bill 25.50 hours at $75 per hour. The Court finds that it is reasonable to bill 12.25 hours at $40 and per hour and 12.25 hours at $75 per hour.

Ms. Trotter's attorney's fees are calculated as follows:

| FEES: | 12.25 hours times $75/hour equals | $956.25 |
| | 12.24 hours times $40/hour equals | $490.00 |
| | | $1,446.25 |

From the preceding calculations, the following summary is derived:

| Mr. Coash: | 100.00 hours | × | $75/hour | = | $ 7,500.00 |
| Mr. Stichman: | 99.75 hours | × | $120/hour | = | $11,970.00 |
| Mr. Diamond: | 132.90 hours | × | $60/hour | = | $ 7,974.00 |
| Ms. Dusman: | 23.75 hours | × | $75/hour | = | $ 1,781.25 |
| Ms. Trotter: | 12.25 hours | × | $75/hour | = | $ 956.25 |
| Ms. Trotter: | 12.25 hours | × | $40/hour | = | $ 490.00 |

| Total Attorneys' Fees | $30,671.50 |
| Total Costs | 213.60 |
| Total Fees and Costs | $30,885.10 |

### Conclusion

In all, plaintiff is entitled to $30,885.10 from the Government for its work in this litigation. The Court notes that Mr. Coash as well as Mr. Stichman provided able representation and both have—in the main—exercised reasonable billing judgment in reducing the total number of billable hours. The Court notes that normally it would have reduced and eliminated more hours or perhaps questioned whether it is proper to submit a bill for five attorneys working on such a project. But Mr. Stichman has indicated that he has safeguarded against unproductive time due to duplication of effort by segregating the roles of the four attorneys and by supervising their work.

Further, Mr. Stichman has documented his considerable experience in preparing appellate briefs and memoranda of law on the application of 28 U.S.C. § 2401(a), the six year federal statute of limitations, with respect to actions brought pursuant to the Administrative Procedure Act to review

BCMR decisions. The Court finds persuasive Mr. Stichman's assertion that his experience in other similar cases has substantially reduced the number of hours that he, Mr. Stichman, as well as Mr. Diamond and Ms. Dusman spent preparing and filing the memoranda in this case.

Finally, the Court is familiar with the very recent Sixth Circuit decision *Coulter v. State of Tennessee, et al.,* 805 F.2d 146, 151 (6th Cir.1986) which held that "[i]n the *absence of unusual circumstances,* the hours allowed for preparing and litigating the attorney fee case should not exceed 3% of the hours in the main case when the issue is submitted on the papers without a trial and should not exceed 5% of the hours in the main case when a trial is necessary."

The Court notes that Mr. Coash has billed 10 hours, Mr. Stichman has billed 16.50 hours, and Ms. Trotter has billed 25.50 hours for work expended in researching and preparing the attorney's fees petition. These hours represent approximately 12% of the hours spent on the main case.

The Court points out that it has already ruled that 12.50 hours of Ms. Trotter's time should be billed at $40 per hour because of the "clerical" nature of the work involved in itemizing hours for the supporting affidavits.

More important, in this case the Government's strategy of raising both pre–EAJA Amendment and post–EAJA Amendment arguments necessarily protracted the attorneys' fees litigation. The breadth of the Court's opinion in this case is itself some indication of the legal morass that has ensued partly as a result of recent statutory and case law developments, and partly as a direct result of the stance the Government has taken in this case.

The Court notes that it is true that the "legislative intent behind attorney fee statutes is to encourage lawyers to bring successful civil rights cases, not successful attorney fee cases," and that it is equally apparent that an attorney fee case must

ride "piggy back" on the civil rights case. *Coulter*, 805 F.2d at 151.

However, *Coulter* concerned an attorney's fee appeal arising from a Title VII case. Fees were sought under 42 U.S.C. § 2000e–5(k) (1982) not under the provisions of EAJA. Even assuming the case *sub judice* is somewhat idiosyncratic, it seems likely that even the more "typical" EAJA fee case will present problems not present in other fee shifting statutes in that a determination of fees under EAJA's provisions involves a legal analysis that is necessarily intertwined with and yet distinct from the "main case." This is because the 1985 Amendment declares that to determine whether the Government's position is substantially justified, the Court must look at both the underlying agency position *and* the litigation position. More is involved than merely the determination of whether plaintiff was a prevailing party. In each case the perplexing question of whether or not the Government's position was "substantially justified" must be answered anew.

In any event, under the facts of this case the Court finds that there are unusual circumstances present such that it is reasonable to award attorneys' fees for the 42 hours spent in preparing this fee petition—a figure which is 12% of the hours expended in the main case. In EAJA cases, at least, the Court questions whether reasonable petition hours can ever be estimated with mathematical precision.

### ORDER

In accordance with the opinion rendered this 29 day of January, 1987;

IT IS HEREBY ORDERED that plaintiff's motion for award of reasonable attorneys' fees, costs, and expenses is GRANTED in the amount of $30,885.10; and

IT IS FURTHER ORDERED that defendants shall pay plaintiff the amount of $30,885.10 within thirty (30) days of the date of this order.