Laurence G. RUSSELL, William L. Hanna, and Eddie D. Langwell, Plaintiffs-Appellants,

v.

NATIONAL MEDIATION BOARD, Defendant-Appellee.

No. 84–1345.

United States Court of Appeals, Fifth Circuit.

Oct. 23, 1985.

Robert F. Gore, Rex H. Reed, Springfield, Va., John Cosmic, Amarillo, Tex., for plaintiffs-appellants.

Mark W. Pennak, William Kanter, Dept. of Justice, Washington, D.C., for Nat. Mediation Bd.

Before THORNBERRY, REAVLEY and HIGGINBOTHAM, Circuit Judges.

THORNBERRY, Circuit Judge.

In our initial opinion, we found (1) that the phrase "position of the United States" in the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A) (1982) (repealed 1984), meant the government's litigation position, and not its underlying action; and (2) that appellee National Mediation Board's litigation position was substantially justified. We therefore affirmed the district court's order denying appellant Russell attorney fees for his successful

action against the Board. *Russell v. National Mediation Board*, 764 F.2d 341 (5th Cir.1985).

Russell submitted a suggestion for rehearing en banc on July 12, 1985. No member of the panel nor Judge in regular active service of this Court having requested that the Court be polled on rehearing en banc, we denied the suggestion on August 5. Treating the suggestion as a petition for rehearing, we denied the petition as well. That same day, the President signed into law a bill that extended and amended the EAJA. Act of Aug. 5, 1985, Pub.L. No. 99–80, 99 Stat. 183. One provision of the new statute defines "position of the United States" as "in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based." *Id.* § 2(c)(2), 99 Stat. at 185 (to be codified at 28 U.S.C. § 2412(d)(2)(D)). In light of the obvious conflict between this provision and our previous holding, we withheld our mandate on August 9 and invited the parties to brief the new statute's effect on this case.

We now withdraw our initial opinion. We hold (1) that the definition of "position of the United States" contained in the new statute applies to this case; (2) that the Board's underlying action was not "substantially justified"; (3) that there are no "special circumstances" in this case that would make an award unjust; and (4) that Russell should receive attorney fees for all of the time spent contesting the merits of this case, not just the time spent challenging the government's underlying action.[1] We vacate the district court's order and remand for a determination of the amount of the fee award.

## I. APPLICATION OF PUB.L. NO. 99–80

■ Section 7 of Pub.L. No. 99–80 states: "Except as otherwise provided in this section, the amendments made by this

---

1. In our earlier opinion we held that Russell's fee application was timely filed under the old EAJA. *Russell,* 764 F.2d at 346–49. The parties agree that the application was timely filed under the new Act.

Act shall apply to cases pending on or commenced on or after the date of the enactment of this Act." Pub.L. No. 99–80, § 7(a), 99 Stat. at 186. The exceptions are not pertinent here.[2] The issue, therefore, is whether this case was "pending" on August 5, 1985, the day the new EAJA became law.

It is clear that Russell's fee application was pending on August 5. Although we denied his petition for rehearing and suggestion for rehearing en banc on that day, we subsequently withheld the mandate. Moreover, Russell retained the option of petitioning the Supreme Court for writ of certiorari. *See Ochoa v. Employers National Insurance Co.*, 754 F.2d 1196, 1198 (5th Cir.1985). The Board argues, however, that a case is not "pending" under Pub.L. No. 99–80 when the only matter remaining to be considered is a fee application.

We begin our consideration of this argument with the language of the statute. The phrase "cases pending" makes no distinction between the fee application stage of a case and consideration of the merits. On its face, therefore, the statute applies to fee applications pending on the date of enactment.

The statutory language is not entirely free of ambiguity, however, so we turn to the legislative history for further guidance. The House Report accompanying H.R. 2378, which became Pub.L. No. 99–80, states:

> The changes which are made by H.R. 2378 which merely clarify existing law are retroactive, and apply to matters which were pending on, or commenced on or after October 1, 1981. However, changes which are made by H.R. 2378 and which expand or otherwise change existing law shall take effect on the date of enactment and shall apply to matters pending on or commenced after that date.

H.R.Rep. No. 120 (pt. 1), 99th Cong., 1st Sess. 11 (1985), *reprinted in* 1985 U.S.Code Cong. & Ad.News 132, 139.[3]

The House Report makes clear that the definition of "position of the United States" contained in Pub.L. No. 99–80 is intended to clarify existing law. *See id.* at 7, 1985 U.S.Code Cong. & Ad.News at 135 ("H.R. 2378 clarifies that the United States will be liable unless the position of the government—the action or failure to act by the government upon which the administrative proceeding or civil action is based, as well as the litigation position—is substantially justified...."); *id.* at 9, 1985 U.S.Code Cong. & Ad.News at 137 ("H.R. 2378 clarifies that the broader meaning [of 'position of the United States'] applies."); *id.* at 12, 1985 U.S.Code Cong. & Ad.News at 140 ("The Committee here defines the 'position' term in a way to clarify the EAJA, consistent with the original Congressional intent and the underlying purposes of the statute."); *id.* at 16, 1985 U.S.Code Cong. & Ad.News at 144 ("[T]he Committee, consistent with the original Act, has determined that it would be unfair to parties ... to be denied fees when the underlying agency action was not substantially justified."). Thus, the definition of "position of the United States" contained in the new Act should apply to this action, which was before the district court on the merits on October 1, 1981.

The Board relies heavily on a statement by Representative Kastenmeier, a co-sponsor of H.R. 2378:

> I would like to clarify the effective date provisions of H.R. 2378 and the

---

**2.** One of the exceptions applies to cases "commenced on or after October 1, 1984, and finally disposed of before the date of the enactment of this Act." Pub.L. No. 99–80, § 7(b), 99 Stat. at 186. The other exception applies to prior Board of Contracts Appeals cases. *Id.* § 7(c), 99 Stat. at 187.

**3.** Another passage from the House Report is to similar effect: "To the extent that amendments made by this Act merely clarify the original Congressional intent in EAJA these amendments will have the effect of informing judicial construction of pre-1985 provisions of EAJA with respect to pending cases." H.R.Rep. No. 120 (pt. 1) at 21, 1985 U.S.Code Cong. & Ad.News at 149.

relationship of these provisions with the original act. Cases which were pending on October 1, 1984, including fee application proceedings would be governed by the original act, provided that the time to file the fee application expired before the date of enactment of this bill. This bill would apply to any case pending on October 1, 1984, and finally disposed of before the date of enactment of this bill, if the time for filing an application for fees and other expenses had not expired as of such date of enactment.

131 Cong.Rec. H4762 (daily ed. June 24, 1985). The Board points out that this fee application proceeding was "pending on October 1, 1984" and that the time to file the application expired that year. It concludes, therefore, that this proceeding is "governed by the original act."

Although the Board's interpretation of Representative Kastenmeier's statement is plausible, it does not resolve the statement's crucial ambiguity. Representative Kastenmeier does not address the distinction in the House Report between provisions that "clarify existing law" and those that "expand or otherwise change existing law." H.R.Rep. No. 120 (pt. 1) at 11, 1985 U.S.Code Cong. & Ad.News at 139. Thus, we cannot be sure whether Representative Kastenmeier's reference to the "original act" means the Act as "clarified" by the new amendments or the Act as interpreted by the courts before the amendments were enacted. We doubt, however, that he intended courts with fee applications pending to disregard the clarifying provisions of the new Act in defining the terms of the original EAJA.

We conclude that the language and legislative history of Pub.L. No. 99–80 indicate that its definition of "position of the United States" applies to this case. The case law supports this conclusion. In *Bradley v. School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court confronted circumstances similar to ours. Attorneys for successful civil rights plaintiffs sought attorney fees. The district court granted fees and the defendant appealed. While the fee award was before the court of appeals, the President signed the Education Amendments of 1972, which included a provision for attorney fees in school desegregation cases. The court of appeals held that the new statute did not apply to the case before it.

In vacating the judgment of the court of appeals, the Supreme Court relied on "the principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Id.* at 711, 94 S.Ct. at 2016. The Eighth Circuit applied this principle in holding that the original EAJA, which contained an effective date provision similar to § 7 of Pub.L. No. 99–80, controlled a case in which only the fee application was pending at the time of enactment. *United States for Heydt v. Citizens State Bank*, 668 F.2d 444, 446 (8th Cir.1982). This Court followed suit, noting that:

> [a]bsent any legislative history to the contrary, an action is "pending" so long as a party's right to appeal has not yet been exhausted or expired.... The fact that a motion for attorneys' fees is the only matter pending before a court does not mean that court lacks jurisdiction or that the case is not "pending."

*Knights of the Ku Klux Klan v. East Baton Rouge Parish School Board*, 679 F.2d 64, 67–68 (5th Cir.1982).

Other courts have criticized our decision in *KKK* for failing to apply the principle that waivers of sovereign immunity are to be narrowly construed. *See Tongol v. Donovan*, 762 F.2d 727, 730–33 (9th Cir. 1985) (original EAJA does not apply to cases in which only a fee application was pending on date of enactment); *Nichols v. Pierce*, 740 F.2d 1249, 1255–58 (D.C.Cir. 1984) (same); *cf. Commissioners of Highways v. United States*, 684 F.2d 443, 444–45 (7th Cir.1982) (decided before *KKK*; same result as *Tongol* and *Nichols*); *see also Ruckelshaus v. Sierra Club*, 463 U.S. 680, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983) (Clean Air Act provision allowing

attorney fees against federal government is waiver of sovereign immunity that must be strictly construed). *Tongol, Nichols,* and *Commissioners* find *Bradley* inapposite to an EAJA case because the United States was not a party in *Bradley* and no waiver of sovereign immunity was involved.

Whatever the merit of the criticism directed at *KKK,* it has little weight here. The legislative history of the new EAJA, unlike that of the original Act, suggests that Congress intended the "clarifying" amendments to apply to cases in which only the fee application remained to be decided. *Cf. New York Association for Retarded Children v. Carey,* 711 F.2d 1136, 1144–45 (2d Cir.1983) (Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988, applies to fee application pending at time of enactment; legislative history indicates that *Bradley* rule applies). Moreover, the clarifying amendments in Pub.L. No. 99–80 do not waive sovereign immunity in the same sense that the original EAJA did; the original Act created a new liability where none previously had existed, while the portion of the new Act with which we are concerned—the definition of "position of the United States"—merely "clarif[ies] the EAJA, consistent with the original Congressional intent and the underlying purposes of the statute." H.R.Rep. No. 120 (pt. 1) at 12, 1985 U.S.Code Cong. & Ad. News at 140.

In light of the language and legislative history of Pub.L. No. 99–80 and the relevant case law, we hold that this case was "pending" when the new EAJA became law and that the definition of "position of the United States" contained in the new Act applies here.

## II. WAS THE BOARD'S UNDERLYING ACTION "SUBSTANTIALLY JUSTIFIED"?

The EAJA does not permit attorney fees to be awarded when the government's litigation position and underlying action are "substantially justified." 28 U.S.C. § 2412(d)(1)(A). Neither the original Act nor the new amendments defines the phrase "substantially justified." We must first determine the proper meaning of these words and then decide whether the Board's underlying action in this case—its order dismissing Russell's application for a representational election—was substantially justified.[4]

### A. The Meaning of "Substantially Justified"

In *KKK* we held that "[t]he test of whether or not a government action is substantially justified is essentially one of reasonableness." 679 F.2d at 68 (citing H.R. Rep. No. 1418, 96th Cong., 2d Sess. 10–11 (1980), *reprinted in* 1980 U.S.Code Cong. & Ad.News 4953, 4989); *see United States v. 329.73 Acres of Land,* 704 F.2d 800, 803 (5th Cir.1983) (en banc); *Martin v. Heckler,* 754 F.2d 1262, 1264 (5th Cir.1985); *S & H Riggers & Erectors, Inc. v. Occupational Safety & Health Review Commission,* 672 F.2d 426, 430 (5th Cir.1982). *But cf. Spencer v. National Labor Relations Board,* 712 F.2d 539, 558 (D.C.Cir.1983) (test should be "slightly more stringent" than reasonableness), *cert. denied,* ―― U.S. ――, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984). The government bears the burden of showing that its position was reasonable. *Martin,* 754 F.2d at 1264.

The legislative history of Pub.L. No. 99–80 casts some doubt on the "reasonableness" standard. The House Report states: "Several courts have held correctly that 'substantial justification' means more than merely reasonableness." H.R.Rep. No. 120 (pt. 1) at 9, 1985 U.S.Code Cong. & Ad. News at 138 (footnotes omitted). The House Report adds that "[a]gency action found to be arbitrary and capricious or unsupported by substantial evidence is virtually certain not to have been substantially justified under the Act." *Id.*

---

4. The parties agree that the Board's litigation position—that its decisions concerning representational disputes are not subject to judicial review—was substantially justified.

The first of these statements provoked no comment on the floor of Congress. The second, however, was expressly repudiated by several of H.R. 2378's co-sponsors. Representative Kastenmeier stated: "I do not understand the committee report to suggest that a finding that an agency action that was not supported by substantial evidence would automatically entitle the prevailing party to fees and expenses or would establish a legal presumption of entitlement to fees." 131 Cong.Rec. H4763 (daily ed. June 24, 1985). Rep. Kindness described the quoted passage from the House Report as a "gratuitously authoritarian overstatement." *Id.* Senator Thurmond indicated that a government position could be "substantially justified" even though a court had found it to be arbitrary and capricious. *Id.* at S9992–93 (daily ed. July 24, 1985).

■ This legislative history is puzzling. The unchallenged portion of the House Report indicates that government action must be more than merely reasonable to be substantially justified. The co-sponsors' comments during the floor debates, by contrast, indicate that an action may be substantially justified even though it is arbitrary and capricious. We see no way to harmonize these positions. *Cf. Spencer,* 712 F.2d at 552 & n. 47 (noting that "a court that has just concluded that the agency's action was 'arbitrary and capricious' would be hard pressed to rule that its action was nevertheless 'substantially justified'"). Finding the legislative history conflicting and inconclusive, we adhere to our position in *KKK* that the standard is one of reasonableness.

The reasonableness standard requires the government to establish that its position has a reasonable basis both in law and in fact. *Martin,* 754 F.2d at 1264; H.R.

Rep. No. 1418 at 10, 1980 U.S.Code Cong. & Ad.News at 4989.[5] We must now determine whether the government made such a showing in this case.

### B. *Applying the Substantial Justification Standard*

#### 1. *Standard of Review*

We may reverse a district court order awarding or denying attorney fees under the EAJA only if we find that the district court abused its discretion. *KKK,* 679 F.2d at 68–69. In determining whether the court has abused its discretion, we are guided by Fed.R.Civ.P. 52(a); findings of fact may be overturned only if "clearly erroneous," while conclusions of law may be reviewed *de novo. See Houston Agricultural Credit Corp. v. United States,* 736 F.2d 233, 235 (5th Cir.1984); *Spencer,* 712 F.2d at 563.

■ A district court's finding that the government's position was or was not substantially justified has both legal and factual aspects. The court's determination whether the government's position had a reasonable basis in law is a conclusion of law that may be reviewed *de novo.* The court's assessment of whether the government's interpretation of the facts is reasonable is best regarded as a finding of fact subject to the "clearly erroneous" standard. *See Spencer,* 712 F.2d at 563–64.

In this case, the facts are undisputed.[6] Our focus, therefore, will be on whether the Board's underlying action had a reasonable basis in law. We may review *de novo* the district court's conclusions on this point.

#### 2. *Substantial Justification*

■ Our holding on the merits in this case was straightforward: "We believe

---

**5.** The House Report accompanying the original EAJA cautions, however, that

[t]he [reasonableness] standard ... should not be read to raise a presumption that the Government position was not substantially justified, simply because it lost the case. Nor, in fact, does the standard require the Government to establish that its decision to litigate

was based on a substantial probability of prevailing.
H.R.Rep. No. 1418 at 11, 1980 U.S.Code Cong. & Ad.News at 4990.

**6.** For the facts in this case, see *Russell v. National Mediation Board,* 714 F.2d 1332, 1334–36 (5th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984).

that the Board breached its clear statutory mandate by not 'progressing' Russell's application for investigation into the representational dispute." *Russell v. National Mediation Board*, 714 F.2d 1332, 1341 (5th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984). We characterized one of the Board's key arguments as "playing games with the plaintiffs and with this court." *Id.* at 1342. Another of the Board's contentions we termed a "perversion of the truth." *Id.* at 1347. Our opinion left little doubt that the Board had disregarded the terms of its governing statute and the case law interpreting that statute.

The Board now argues that the merits panel misunderstood both the Board's position and its duties under the Railway Labor Act. The time for that contention has passed, however; our role is not to decide anew the earlier appeal to this Court, but to determine whether the underlying action that the government defended there was substantially justified in light of the governing law. Our opinion on the merits makes plain that the Board's action was not substantially justified, and the Board has raised no new arguments on this appeal that would cause us to find otherwise.

The Board has not sustained its burden of showing the reasonableness of its underlying action in light of the governing law. We hold, therefore, that the action was not substantially justified.

## III. SPECIAL CIRCUMSTANCES

Section 2412(d)(1)(A) provides a second ground for denying attorney fees to successful litigants against the government: fees shall not be awarded if "special circumstances make an award unjust." The district court relied on this provision as an alternative ground for denying Russell attorney fees. The court held that "the special circumstances of an acknowledged case of first impression makes an award unjust." As with the court's substantial justification finding, we may overturn the finding of special circumstances only if the court abused its discretion. *See KKK*, 679

F.2d at 68–69. Our earlier discussion of the abuse of discretion standard applies here as well: We may review conclusions of law de novo, but we must apply the deferential "clearly erroneous" standard to findings of fact. Because our concern here is with the district court's evaluation of the Board's legal argument, we employ a *de novo* standard of review.

The "special circumstances" provision is a "safety valve" designed to "insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts." H.R.Rep. No. 1418 at 11, 1980 U.S.Code Cong. & Ad.News at 4990; *see KKK*, 679 F.2d at 68. As with the substantial justification provision, the government has the burden of demonstrating the existence of special circumstances that would render an award unjust. *Id.*

The Board urges that because the case on the merits was "one of first impression," *Russell*, 714 F.2d at 1334, it automatically falls within the "special circumstances" exception. As a federal district court recently observed, however, "The 'special circumstances safety valve' does not create a different, less rigorous standard of review for all cases of first impression. It merely preserves government efforts to present creative legal interpretations, which though not yet commonly accepted, still merit the court's careful examination." *Nunes-Correia v. Haig*, 543 F.Supp. 812, 820 (D.D.C.1982); *accord Devine v. Sutermeister*, 733 F.2d 892, 896 (Fed.Cir.1984); *cf. Keasler v. United States*, 766 F.2d 1227, 1234 (8th Cir.1985) ("That a case presents an issue of first impression in the forum does not ipso facto make the government's position in the litigation reasonable.").

■ Although the Board's underlying action may have represented a "novel" interpretation of the Railway Labor Act, that interpretation was not credible, for the reasons discussed briefly in subpart II(B)(2) above and at length in our original opinion on the merits. We hold, therefore, that the government has not demonstrated "special

circumstances" that would make a fee award unjust in this case.

## IV. REMAND

We must remand this case to the district court to determine the amount of Russell's fee award. To guide the district court's consideration of this issue, we address an additional argument raised by the Board: that Russell should be awarded attorney fees only for the time spent contesting the government's underlying action, and not for the time spent challenging the substantially justified litigation position. We reject this argument.

The language of Pub.L. No. 99–80 offers no support for the Board's position. The statute defines "position of the United States" to include both litigation position and underlying action, without mentioning apportionment when the litigation position was substantially justified and the underlying action was not. Pub.L. No. 99–80, § 2(c)(2), 99 Stat. at 185 (to be codified at 28 U.S.C. § 2412(d)(1)(A)). Moreover, when Congress meant to apportion fees, it did so explicitly; the subsection of the statute defining the "position" phrase provides further that "fees and expenses may not be awarded to a party for any portion of the litigation in which the party has unreasonably protracted the proceedings." Id.[7]

Nor does the legislative history help the Board. Although the House Report accompanying Pub.L. No. 99–80 notes that the "position" definition "is not meant to preclude government attorneys from asserting jurisdictional or technical defenses," H.R. Rep. No. 120 (pt. 1) at 11, 1985 U.S.Code Cong. & Ad.News at 140, the preceding sentence states that "the amendment will make clear that the Congressional intent is to provide attorneys' fees when an unjustifiable agency action forces litigation, and the agency then rides [sic] to avoid such liability by reasonable behavior during the litigation," id. Nowhere in the House Report or the Congressional floor debates is there any indication that attorney fees may be awarded for time spent challenging the government's underlying action but not for time spent contesting its substantially justified litigation position.

Cases under the old EAJA holding that fees may be apportioned when the government's litigation position is substantially justified as to some claims but not others are inapposite here. See Cinciarelli v. Regan, 729 F.2d 801, 804–05 (D.C.Cir.1984); Goldhaber v. Foley, 698 F.2d 193, 197 (3d Cir.1983).[8] The language and legislative history of Pub.L. No. 99–80 make clear that the new EAJA is designed to enable those oppressed by unreasonable government action to vindicate their rights without having to worry about attorney fees. Were we to accept the Board's argument, we would defeat that purpose in cases such as this, where a large portion of the suc-

**7.** Fed.R.Civ.P. 37, from which the EAJA's "substantially justified" language is taken, see H.R. Rep. No. 1418 at 13, 1980 U.S.Code Cong. & Ad.News at 4992, contains a provision apportioning expenses incurred in urging or defending a motion to compel discovery: "If the motion is granted in part and denied in part, the court may apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner." Fed.R. Civ.P. 37(a)(4). Congress' decision not to include a similar provision in either the original EAJA or the new Act suggests that it did not intend for attorney fees to be apportioned. But cf. Goldhaber v. Foley, 698 F.2d 193, 197 n. 5 (3d Cir.1983) (stating that "just as the Equal Access to Justice Act has borrowed the term 'substantial justification' from Rule 37(a)(4), so too has it implicitly borrowed the principle of apportionment").

**8.** Cf. Rawlings v. Heckler, 725 F.2d 1192, 1196 (9th Cir.1984). In Rawlings, the Ninth Circuit found that the government's position on the merits was not substantially justified, but that its appeal of the district court's order awarding fees under the EAJA was substantially justified. We agree with the Ninth Circuit that for purposes of apportioning attorney fees, the EAJA fee application may be severed from the proceedings on the merits. Although we do not understand Russell to seek attorney fees for his fee application, we note in case the issue should arise on remand that the government's position in the fee application proceeding is substantially justified, in light of the uncertainty surrounding the phrase "position of the United States" and the retroactive effect of Pub.L. No. 99–80. See Rawlings, 725 F.2d at 1196.

cessful attorney's time is spent dealing with the litigation position.

■ We hold that in computing Russell's attorney fees on remand, the district court should consider the time spent presenting the entire case on the merits, not just the time spent contesting the government's underlying action.

Our original opinion in *Russell v. National Mediation Board,* 764 F.2d 341 (5th Cir.1985), is withdrawn and the order of the district court denying Russell attorney fees is vacated. The case is remanded to the district court for computation of the amount of attorney fees due Russell.

VACATED AND REMANDED.