**Bryant Franklin BLACKMON, Jr.,
Plaintiff-Appellant,**

v.

**UNITED STATES of America, United States Dept. of Labor, Office of Federal Employees' Compensation, Defendants-Appellees.**

No. 85–5765.

United States Court of Appeals,
Sixth Circuit.

Submitted July 25, 1986.

Decided Dec. 9, 1986.

Rehearing and Rehearing En Banc
Denied Feb. 19, 1987.

John W. Gill, U.S. Atty., Chattanooga, Tenn., John C. Cook, for defendants-appellees.

Joe Timberlake, Chattanooga, Tenn., for plaintiff-appellant.

Before WELLFORD and BOGGS, Circuit Judges, and DeMASCIO, District Judge.*

WELLFORD, Circuit Judge.

Appellant appeals District Judge Edgar's determination that attorneys' fees could not be awarded against the United States Department of Labor under the Equal Access to Justice Act (EAJA). Judge Edgar relied upon *Trident Marine Construction, Inc. v. District Engineer, United States Army Corps of Engineers,* 766 F.2d 974 (6th Cir.1985), to conclude that fees should not be awarded because there was substantial justification for the government's *litigation* position. The government had settled with plaintiff before trial and paid him a lump sum of nearly $60,000.00. Subse-

---

* The Honorable Robert E. DeMascio, United States District Court, Eastern District of Michi-     gan, sitting by designation.

quent to that decision by the district court and pending appeal, an amendment to EAJA was adopted which required consideration of the government's litigation *and agency* position in determining whether there was substantial justification for the government's stance. An issue on appeal is whether the 1985 EAJA amendment applies to cases in which the fee petition was the only aspect of the case that was pending at the time the amendment became effective. If the amendment is not applicable, we must also decide whether *Trident Marine* was properly construed to bar the award of fees to plaintiff's attorney under the circumstances of this case.

In September 1976 while on the job, plaintiff Blackmon, a mail carrier, sustained a back injury. He continued to work intermittently until April 1978 when he was awarded workers' compensation benefits under the Federal Employees' Compensation Act. In November 1978 his compensation was discontinued by the Director of Office of Federal Employees' Compensation (OFEC) after a determination that Blackmon was no longer disabled. Plaintiff's attorney, Joe Timberlake, promptly requested reconsideration of this termination of benefits. Reconsideration was denied on April 5, 1979, despite recommendation by an OFEC claims examiner that the order of termination of benefits be vacated. Plaintiff's attorney then requested further reconsideration, and a hearing was held by the Branch of Hearings and Review in March of 1980 (almost a year after the hearing was requested). A decision affirming the order rejecting plaintiff's claim for benefits was finally entered ten months later, in January 1981. To compound the delay, the order was sent only to plaintiff, not to Timberlake, his attorney, who then requested an appeal to the Employees' Compensation Appeals Board. The Appeals Board then set aside OFEC's previous decision holding that OFEC had not carried the burden of showing that plaintiff's disability had ceased, and OFEC was directed to refer plaintiff to a Board-certified medical specialist for further ex-amination. OFEC was then directed to issue a *de novo* decision.

After several months delay, plaintiff's attorney filed a motion in October 1981 to obtain interim compensation for plaintiff, but there was no response. On July 15, 1982, plaintiff (again, not his attorney) was notified of another examination before a Board-certified orthopedic surgeon. The examination was conducted, and the doctor's report was sent to OFEC the same day. Five months later OFEC requested additional information from the plaintiff in connection with his claim.

Because of OFEC's continuing delay, plaintiff filed suit on February 8, 1983, in District Court, alleging due process violations arising from OFEC's inaction and delay in handling of plaintiff's claim. The government responded by indicating its willingness to award benefits retroactively, to a total amount of $59,414.27. $2,755.16 of that amount was retained to cover retroactive health and life insurance premiums, .and, by court order, 25% of the balance was retained as approved attorney's fees. Checks in these amounts were promptly issued to plaintiff and his counsel.

Plaintiff's attorney, however, pursued a claim for attorney's fees under EAJA against the Department of Labor. The District Court limited recovery under EAJA for "services rendered in obtaining past due benefits and only through the period ending no later than the date of receipt by the plaintiff of the government's check for these benefits." Subsequently, Mr. Timberlake submitted an application for fees asserting that he had spent 77.5 hours on this case and suggesting $75.00 per hour as the prevailing rate. The government opposed the motion.

The District Court denied plaintiff's request for attorney's fees, finding that pursuant to *Trident Marine Construction, Inc. v. District Engineer, United States Army Corps of Engineers,* 766 F.2d 974 (6th Cir.1985), the Sixth Circuit had adopted what is known as the litigation position approach in determining whether to award attorneys' fees under EAJA. Un-

der *Trident Marine* the District Court found that the government's litigation position was to "pay the plaintiff his benefits. The Court can find no fault with this position and finds that it was indeed substantially justified." In dicta, however, the court observed that a contrary result would have been indicated if the "underlying agency position" had been the proper standard:

In the case at bar, if the Court were to take the "underlying agency position" approach, it would award attorneys fees to the plaintiff under the Act. The complaint alleges unconscionable delay in the processing of plaintiff's claim by the Office of Federal Employees' Compensation, as well as a denial of benefits due the plaintiff under the Federal Employees' Compensation Act. These actions occurred in the face of a clear and uncontradicted certified (by reputable physicians) medical disability inflicting [sic] plaintiff. None of the above has ever been denied by the Government. In fact, these allegations were implicitly admitted by the Government which, as the District Court recited in its order of March 3, 1983, "the Office of Federal Employees' Compensation had made a mistake in handling the claim of Bryant Franklin Blackmon, Jr...." It is evident that this position was not substantially justified.

We must decide whether the recent EAJA amendment stating that the government's "position" includes both its litigation and underlying agency position, is applicable to a case like this which was pending on appeal only with respect to a petition for attorney's fees. The 1985 amendments are "applicable to cases pending on or commenced on or after August 5, 1985...." The Fifth Circuit addressed that question in *Russell v. National Mediation Board*, 775 F.2d 1284 (5th Cir.1985). In *Russell*, claimant had originally lost his appeal because the court of appeals had adhered to the "litigation position" test. The court had also denied Russell's petition for reconsideration or rehearing en banc. The EAJA amendment became effective on the date that en banc rehearing was denied. Because the amendment to EAJA was thought to conflict with its interpretation of the government's position, the *Russell* court withheld its mandate and directed the parties to brief the effect of the new statute on the case.

Timberlake and his client rely on this reasoning from *Russell:*

We begin our consideration of this argument with the language of the statute. The phrase "cases pending" makes no distinction between the fee application stage of a case and consideration of the merits. On its face, therefore, the statute applies to fee applications pending on the date of enactment.

The statutory language is not entirely free of ambiguity, however, so we turn to the legislative history for further guidance. The House Report accompanying H.R. 2378, which became Pub.L. No. 99–80, states:

The changes which are made by H.R. 2378 which merely clarify existing law are retroactive, and apply to matters which were pending on, or commenced on or after October 1, 1981. However, changes which are made by H.R. 2378 and which expand or otherwise change existing law shall take effect on the date of enactment and shall apply to matters pending on or commenced after that date.

H.R.Rep. No. 120 (pt. 1), 99th Cong., 1st Sess. 11 (1985), *reprinted in* 1985 U.S.Code Cong. & Ad.News 132, 139.

The House Report makes clear that the definition of "position of the United States" contained in Pub.L. No. 99–80 is intended to clarify existing law. *See id.* at 7, 1985 U.S.Code Cong. & Ad.News at 135 ("H.R. 2378 clarifies that the United States will be liable unless the position of the government—the action or failure to act by the government upon which the administrative proceeding or civil action is based, as well as the litigation position—is substantially justified...."); *id.* at 9, 1985 U.S.Code Cong. & Ad.News at 137 ("H.R. 2378 clari-

fies that the broader meaning [of 'position of the United States'] applies."); *id.* at 12, 1985 U.S.Code Cong. & Ad.News at 140 ("The Committee here defines the 'position' term in a way to clarify the EAJA, consistent with the original Congressional intent and the underlying purposes of the statute."); *id.* at 16, 1985 U.S.Code Cong. & Ad.News at 144 ("[T]he Committee, consistent with the original Act, has determined that it would be unfair to parties ... to be denied fees when the underlying agency action was not substantially justified."). Thus, the definition of "position of the United States" contained in the new Act should apply to this action, which was before the district court on the merits on October 1, 1981.

The Board relies heavily on a statement by Representative Kastenmeier, a co-sponsor of H.R. 2378:

I would like to clarify the effective date provisions of H.R. 2378 and the relationship of these provisions with the original act. Cases which were pending on October 1, 1984, including fee application proceedings would be governed by the original act, provided that the time to file the fee application expired before the date of enactment of this bill. This bill would apply to any case pending on October 1, 1984, and finally disposed of before the date of enactment of this bill, if the time for filing an application for fees and other expenses had not expired as of such date of enactment.

131 Cong.Rec. H4762 (daily ed. June 24, 1985). The Board points out that this fee application proceeding was "pending on October 1, 1984" and that the time to file the application expired that year. It concludes, therefore, that this proceeding is "governed by the original act."

Although the Board's interpretation of Representative Kastenmeier's statement is plausible, it does not resolve the statement's crucial ambiguity. Representa-tive Kastenmeier does not address the distinction in the House Report between provisions that "clarify existing law" and those that "expand or otherwise change existing law." H.R.Rep. No. 120 (pt. 1) at 11, 1985 U.S.Code Cong. & Ad.News at 139. Thus, we cannot be sure whether Representative Kastenmeier's reference to the "original act" means the Act as "clarified" by the new amendments or the Act as interpreted by the courts before the amendments were enacted. We doubt, however, that he intended courts with fee applications pending to disregard the clarifying provisions of the new Act in defining the terms of the original EAJA.

We conclude that the language and legislative history of Pub.L. No. 99–80 indicate that its definition of "position of the United States" applies to this case. The case law supports this conclusion....

*Russell,* 775 F.2d at 1286–87 (footnote omitted). The *Russell* court then relied upon the rule set forth in *Bradley v. School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), " 'that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary.' " *Russell,* 775 F.2d at 1287, *quoting Bradley,* 416 U.S. at 711, 94 S.Ct. at 2016. *Accord Linn v. Chivatero,* 790 F.2d 1270 (5th Cir.1986); *Herron v. Bowen,* 788 F.2d 1127, 1129–30 (5th Cir.1986). Dicta in *Wyoming Wildlife Federation v. United States,* 792 F.2d 981, 985 n. 1 (10th Cir.1986), implicitly assumes without analysis that the 1985 EAJA amendments apply to fee petitions pending on the effective date.[1]

We are persuaded, however, by the reasoning employed by several circuits on the issue of whether the *original* EAJA was

---

1. *But see Massachusetts Fair Share v. Law Enforcement Assistance Administration,* 776 F.2d 1066 (D.C.Cir.1985), where the court observed in a footnote that the 1985 amendments would not apply because petitioner filed the action

"before October 1, 1984." *Id.* at 1068–69 n. 17. This conclusion was dicta because the court then concluded that the result would "[i]n any event" have been the same. *Id.*

applicable to pending fee petitions. *See Tongol v. Donovan,* 762 F.2d 727 (9th Cir. 1985); *Nichols v. Pierce,* 740 F.2d 1249 (D.C.Cir.1984); *Commissioners of Highways of Towns of Annawan v. United States,* 684 F.2d 443 (7th Cir.1982). These courts reasoned that the principle of *Bradley v. School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), cited in *Russell,* is inapplicable when the United States is the party from whom the prevailing petitioner seeks attorney's fees. The latter decisions indicated that EAJA operated as a waiver of the government's sovereign immunity, and such waivers must be construed narrowly, with any reasonable doubts resolved in the government's favor. These cases have construed the word "pending" with respect to the *original* Act's effective date, to mean only those cases in which the *merits* of the case, not merely collateral issues such as fee applications, remain to be decided.

> While the dispute in this suit was pending for over one year prior to the Act's passage, there are many other fee controversies which have been pending even longer; the total number of such cases is indefinite. If liability were imposed [on the government], the financial drain on the Treasury would be staggering. The Supreme Court has noted the existence of over 150 federal fee shifting statutes. Under the interpretation propounded by the appellant, the United States would suddenly become potentially responsible for attorneys fees in all fee disputes arising under any one of these statutes, even though the underlying lawsuits had been settled many months or years prior to the effective date of the Act. We cannot infer this large liability out of congressional silence as to the scope of pending cases, even when prompted by the appellant's broad interpretative innuendo, which stretches the term "pending" beyond the ordinary meaning apparent from the face of the statute.

*Nichols,* 740 F.2d at 1257 (footnotes omitted).

The court in *Tongol* also criticized reliance on *Bradley,* as "devoid of any statutory analysis ... and hampered by a failure to heed principles of narrow construction." 762 F.2d at 732.

These latter courts merely applied the general principle of *Bradley v. School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) (*Bradley*), "that a court is to apply the law in effect at the time it renders its decision, unless ... there is statutory direction or legislative history to the contrary," *id.* at 711, 94 S.Ct. at 2016, without considering the difference between the purpose and effect of the Act and the statute at issue in *Bradley.* The Supreme Court articulated the *Bradley* principle as justification for allowing a group of civil rights plaintiffs to obtain attorneys' fees pursuant to section 718 of the Education Amendments of 1972 ..., even though the only issue pending on that section's effective date was the propriety of an attorneys' fee award. 416 U.S. at 709–11, 94 S.Ct. at 2015–16. In *Bradley,* however, the Court did not face any potential waiver of sovereign immunity requiring application of the principle of narrow construction. By contrast, when this principle applies as it does with the Act, it harmonizes with the *Bradley* principle to require the narrowest interpretation of the sovereign immunity waiver not inconsistent with "statutory direction or legislative history." *Id.* at 711, 94 S.Ct. at 2016. This result is required by the latest teaching of the Supreme Court that "[w]aivers of immunity must be 'construed strictly in favor of the sovereign,' and not 'enlarge[d] ... beyond what the language requires.'" *Ruckelshaus* [*v. Sierra Club*], 463 U.S. [680] at 685, 103 S.Ct. [3274] at 3277 [77 L.Ed.2d 938 (1983)] (citations omitted). We are disinclined to follow the Fifth and Eighth Circuit approaches because they failed to make this critical distinction.

*Tongol,* 762 F.2d at 732.[2]

Because a majority of circuits had adopted the litigation position analysis in

---

**2.** In *American Pacific Concrete Pipe Co. v.* *NLRB,* 788 F.2d 586 (9th Cir.1986), the Ninth

determining whether to make an award under EAJA, application of the 1985 amendments, which require consideration of the litigation *and* agency position, to pending fee petitions would likely result in a further and substantial drain on this nation's already beleaguered Treasury. Thus the reasoning found in *Tongol* and *Nichols* is equally applicable to the issue before us. Additionally the Fifth Circuit in *Russell* acknowledged as "plausible" the government's interpretation of the legislative history of the 1985 amendments, which would apply the original Act to cases pending on the effective date, if the time for filing a fee petition had expired by the date of enactment, as it had in this case. With this indicia of legislative intent given by the Act's co-sponsor, Congressman Kastenmeier, we should strictly construe, in the government's favor, this further waiver of its sovereign immunity and not apply the EAJA amendments to this case. We are not persuaded to the contrary by appellant's arguments, including those made in his reply brief.

Accordingly, we AFFIRM the district court's application of *Trident Marine* in this case. Since there is evidence that the *litigation* position of the government in this case was justified, and since we find the 1985 EAJA amendment to be inapplicable and we are not, therefore, required to take into account the underlying agency position, we AFFIRM the district court's denial of fees under EAJA.[3]

Circuit addressed whether the expansion of the government's liability under 28 U.S.C. § 2412(d)(2)(B) in the 1985 amendments to EAJA were applicable to cases in which the fee application was the only matter pending appeal. The court distinguished *Russell* on the ground that *Russell* found the "agency position" amendment to clarify only while in this case the amendment expanded governmental liability. Thus the *American Pacific* court found *Tongol's* rationale to control and found further support in Congressman Kastenmeier's remarks. *Id.* at 589–90.

3. We note that since provision has previously been made for Mr. Timberlake out of the settlement award, appellant's counsel has been compensated for his diligent service to his client.