# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-60556

United States Court of Appeals
Fifth Circuit

**FILED**
April 12, 2019

Lyle W. Cayce
Clerk

DRIN SYLEJMANI,

  Petitioner

v.

WILLIAM P. BARR, U.S. ATTORNEY GENERAL,

  Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A097 682 016

Before JOLLY, COSTA, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

On April 12, 2018, this court resolved the above-captioned case by granting the petitioner's petition for review of the Board of Immigration Appeals's decision denying his untimely motion to reopen his removal proceedings. The court remanded the case to the Board to reconsider the petitioner's motion in the light of this court's recent holding in *Lugo-Resendez v. Lynch*, 831 F.3d 337 (5th Cir. 2016), which established that untimely

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-60556

motions to reopen are subject to equitable tolling. *See Sylejmani v. Sessions*, 729 F. App'x 317 (5th Cir. 2018). Although it acknowledged that *Lugo-Resendez* had not yet been decided when the Board denied the petitioner's motion, the court determined that the Board abused its discretion by failing to consider the petitioner's argument that 8 U.S.C. § 1229a(c)(7)'s 90-day deadline for the filing of motions to reopen removal proceedings should be equitably tolled in his case. *See id.* at 320–22. After securing remand, the petitioner moved for attorney's fees under the Equal Access to Justice Act (EAJA), which provides that federal courts shall award fees to the prevailing private party "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The panel that decided the merits of the underlying appeal was unable to achieve consensus upon the petitioner's EAJA motion and therefore transferred the motion to this panel. Because we find that the government's position was substantially justified, we DENY the petitioner's motion for attorney's fees under the EAJA.

I.

In the underlying case, the petitioner successfully appealed an order of the Board of Immigration Appeals (BIA) denying his motion to reopen his removal proceedings under 8 U.S.C. § 1229a(c)(7). *See Sylejmani*, 729 F. App'x 317. For ease of reference, we restate the facts of that case below:

> Sylejmani, a citizen of Kosovo, was admitted to the United States on a J-1 exchange visitor visa. The visa permitted him to remain in the country until September 30, 2012, but he stayed beyond that date without authorization. In September 2013, Sylejmani retained attorney Nicholas Nevarez, Jr., who assisted Sylejmani and Sylejmani's then-wife (herself a U.S. citizen) with paperwork supporting Sylejmani's application for adjustment to lawful permanent resident status.
>
> In February 2014, the Department of Homeland Security (DHS) initiated removal proceedings against Sylejmani, charging

2

that he failed to maintain his status as an exchange visitor student and had remained in the United States without authorization. An initial hearing was held before an immigration judge (IJ) in April 2014. Because Sylejmani did not have an attorney at the hearing, the IJ continued the proceedings to afford him the opportunity to obtain one.

Sylejmani and his first wife divorced on August 21, 2014. Sylejmani then married his second wife (also a U.S. citizen) on October 7, 2014. Nevarez witnessed and performed the marriage ceremony. On November 10, 2014, Sylejmani's second wife filed a Form I-130 Petition for Alien Relative with United States Citizenship and Immigration Services (USCIS).

### The November 2014 Hearing

The immigration court held a second hearing on November 12, 2014. Sylejmani, who was represented by Nevarez at that hearing, conceded removability but sought relief from removal via adjustment of status. Nevarez told the IJ that "an I-130 has been filed and is pending." The IJ observed that because the second marriage occurred while removal proceedings were pending, there was a presumption that it was not entered into in good faith, and that Sylejmani therefore needed to present evidence to rebut that presumption. The IJ referred to the BIA's decision in *In re Hashmi*, 24 I. & N. Dec. 785 (BIA 2009), which sets forth the factors that an IJ should consider when determining whether to grant a continuance of "removal proceedings pending final adjudication of an I-130 filed in conjunction with an adjustment application" (i.e., a "*Hashmi* continuance"). *Id.* at 790.

Nevarez requested a continuance so that he could gather evidence to support a request for a *Hashmi* continuance, telling the IJ that he had just been retained to represent Sylejmani in the case that same day. The IJ asked when Sylejmani had hired Nevarez, and Nevarez replied, "for the deportation, yesterday." The Government's attorney opposed a continuance. Nevarez provided a copy of the I-130 petition and an accompanying letter. The IJ stated there was no evidence that the I-130 had actually been filed, no copy of the couple's marriage license, and no birth certificate or other evidence establishing that Sylejmani's second wife was a U.S. citizen. In light of this lack of evidence, the IJ refused to grant a continuance.

No. 16-60556

Since Nevarez could not present any other basis for relief, the IJ asked whether Sylejmani wanted to request voluntary departure. The IJ advised Sylejmani that:

> The benefit to you of voluntary departure . . . is that if your I-130 is later filed and if it's approved and you can adjust your status, voluntary departure does not prevent you from doing that. If you don't take voluntary departure and you end up with a removal order, then of course you'll be barred from adjusting your status for ten years.

After consulting with Nevarez, Sylejmani accepted voluntary departure, which required him to leave the United States by March 10, 2015. The IJ's written order granted Sylejmani "pre-conclusion voluntary departure . . . in lieu of removal" and included a provision stating that Sylejmani had "waived appeal of all issues."

### *Appeal to the BIA*

Within a month, Sylejmani retained a new attorney, Orlando Mondragon, who filed an appeal with the BIA. Mondragon argued that the IJ's denial of a continuance to allow Nevarez to obtain evidence and familiarize himself with the case amounted to effective denial of Sylejmani's right to counsel, and that the IJ erroneously denied a *Hashmi* continuance. On October 23, 2015, the BIA dismissed the appeal for lack of jurisdiction, finding that Sylejmani waived his right to appeal by accepting pre-conclusion voluntary departure.

### *The Motion to Reopen*

On April 18, 2016, Sylejmani, having obtained new counsel, filed a motion to reopen his case with the BIA. His central contention was that Nevarez and Mondragon rendered ineffective assistance of counsel. Specifically, Sylejmani argued that he hired Nevarez over a year before the November 2014 hearing, that Nevarez's unjustifiable failure to prepare for that hearing resulted in the denial of a *Hashmi* continuance, and that Nevarez's subsequent advice to elect voluntary departure substantially limited Sylejmani's ability to obtain other relief. Sylejmani further asserted that Mondragon provided ineffective assistance by filing an appeal he knew would be dismissed due to Sylejmani's waiver, and by advising Sylejmani not to file a complaint against Nevarez,

4

even though such a complaint would have allowed Sylejmani to reopen the proceedings based on Nevarez's ineffectiveness. Sylejmani acknowledged that the motion to reopen had not been filed within 90 days of the BIA's dismissal of his appeal but maintained that equitable tolling applied because (1) the ineffective assistance of both of his prior attorneys qualified as an extraordinary circumstance, and (2) he was diligent in pursuing his claims.

Sylejmani attached a substantial amount of evidence to his motion to reopen, including: a sworn affidavit recounting his representation by Nevarez and Mondragon; correspondence with Nevarez and Mondragon regarding their allegedly deficient performance; grievances filed by Sylejmani against both attorneys with the State Bar of Texas, and responses thereto; various immigration forms, including the I-130 petition filed by Sylejmani's second wife; tax returns, including a 2014 tax return jointly filed by Sylejmani and his second wife; and the second wife's birth certificate, which shows that she was born in the United States.

### The BIA's Denial of the Motion to Reopen

On July 22, 2016, the BIA issued an order denying Sylejmani's motion to reopen "as untimely filed." The BIA's only reference to equitable tolling appeared in a single sentence: "Moreover, we decline to equitably toll the applicable time limits based on the respondent's alleged ineffective assistance of former counsel(s) claim."

*Sylejmani*, 729 F. App'x at 318–20.

On appeal, the petitioner argued that the Board abused its discretion in declining to equitably toll 8 U.S.C. § 1229a(c)(7)'s 90-day deadline to file a motion to reopen removal proceedings:

In his motion to reopen [and on appeal], Sylejmani conceded that he had not met the 90-day deadline but urged the BIA to apply equitable tolling. First, he argued that the ineffective assistance provided by his two previous attorneys qualified as an "extraordinary circumstance." In that connection, he contended that compliance with the "strict procedural framework" set forth by the BIA in *In re Lozada*, 19 I. & N. Dec. 637 (BIA 1988), entails "a lengthy, time-consuming process" that merits equitable tolling,

particularly given "the challenges of discovering the ineffective assistance" in the first place. Second, Sylejmani argued that he "diligently pursued his claim" by: (1) promptly seeking new counsel after the BIA dismissed his appeal and he "realized the error of his previous counsel"; and (2) subsequently taking steps to comply with *Lozada*'s requirements by collecting the written records in his case, submitting his allegations to both of his previous attorneys, providing them a reasonable time to respond, and then filing a complaint with the Texas State Bar.

*Id.* at 320–21.

In the earlier appeal, the government responded to the petitioner's arguments by acknowledging that this court's opinion in *Lugo-Resendez v. Lynch* subjected § 1229a(c)(7)'s deadline to equitable tolling. The government stressed, however, that the petitioner bears the burden of establishing that equitable tolling is warranted and that tolling is "only appropriate in 'rare and exceptional circumstances.'" *See Stroman v. Thaler*, 603 F.3d 299, 302 (5th Cir. 2010)). The government argued that the petitioner did not carry his burden of demonstrating that such circumstances existed. First, equitable tolling was not appropriate because of the petitioner's unclean hands—he failed to voluntarily depart the United States after he promised to do so. Second, the Board reasonably concluded that the petitioner's counsel was not ineffective, and he failed to demonstrate that he was prejudiced in his pursuit of adjustment of status. Third, the Board did not abuse its discretion by determining that the petitioner was ineligible for adjustment of status based on his marriage, which he entered into after the commencement of removal proceedings. Finally, the government argued, based on the text of the Immigration and Nationality Act, BIA decisions, and Supreme Court precedent, that allowing tolling in this case would create a variety of consequences not intended by Congress because "granting such motions too freely will permit endless delay of deportation by aliens creative and fertile

enough to continually produce new and material facts to establish a *prima facie* case." *See INS v. Abudu*, 485 U.S. 94, 108 (1988).

The earlier panel ultimately held that the BIA abused its discretion by failing to "provide[] a reasoned explanation for rejecting Sylejmani's equitable tolling argument" because it did not discuss the "two key elements of equitable tolling—'diligence' and 'extraordinary circumstances.'" *Sylejmani*, 729 F. App'x at 321 (citing *Lugo-Resendez*, 831 F.3d at 344–45). Instead, the Board considered other factors without adequately "explain[ing] how those considerations are relevant to the motion's timeliness." *Id.* Although the government made numerous other arguments defending the Board's decision under equitable tolling standards and the statutory scheme, the panel refused to consider these justifications because they were not adequately addressed in the BIA's decision itself. *Id.* at 321 n.3. The court concluded by noting that the "particular standard for assessing equitable tolling claims" the Board failed to rely upon were set out in this court's *Lugo-Resendez* decision, released only after the Board issued its order. *Id.* at 322 (citing *Lugo-Resendez*, 831 F.3d at 344–45). This court therefore remanded the case for the Board to apply the proper equitable tolling standard. *Id.* After procuring this remand, the petitioner moved for attorney's fees under the EAJA. That motion is before this panel for resolution, and we now consider whether attorney's fees under the EAJA should be awarded to the petitioner.[1]

## II.

The petitioner argues that it necessarily follows from the court's holding—that the BIA abused its discretion—that the agency action and the government's litigation position were not substantially justified, requiring an

---

[1] As we noted above, the panel that considered the merits of this appeal was unable to reach consensus on the petitioner's EAJA motion and thus transferred the motion to this panel.

award of attorney's fees under the EAJA. We begin with the premise that at the time it denied the petitioner's motion to reopen his removal proceedings as untimely under § 1229a(c)(7)'s 90-day deadline, the BIA failed to apply equitable tolling principles. According to the petitioner, the BIA should have known it was required to do so in the light of the Supreme Court's recent decision in *Mata v. Lynch*, 135 S.Ct. 2150, 2156 (2015). The petitioner further argues that the Board could have discerned such principles from Supreme Court precedent applying equitable tolling in other statutory contexts.

The government responds that the Board's decision was made prior to this court's holding in *Lugo-Resendez* that equitable tolling was applicable to motions to reopen under § 1229a(c)(7)(A); it follows that no standards had been set when considering such an equitable tolling argument. Furthermore, the government argues that the Board's attempt to adjudicate the petitioner's motion was reasonable considering that this circuit's "jurisprudence regarding equitable tolling sought in an untimely motion to reopen evolved from no jurisdiction (*Ramos-Bonilla* [*v. Mukasey*, 543 F.3d 216 (5th Cir. 2008)]) to, after the Board's decision here, setting a standard for the first time to review such motions (*Lugo-Resendez*[, 831 F.3d 337])." Finally, the government emphasizes that this circuit has consistently held that an adverse holding on the merits does not automatically deem the government's position substantially unjustified. Instead, the government's position need only have a reasonable basis in law and fact. Here, the government argues that its position had a reasonable basis in law and fact considering this circuit's rapidly evolving jurisprudence regarding the availability of, and proper standards for, equitable tolling under § 1229a(c)(7)(A).

No. 16-60556

III.

A.

Under the EAJA, this court may not order the government to pay attorney's fees if it finds that "the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).[2]   To meet its burden, the government must demonstrate that its position was "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). "This standard is not overly stringent, however, and the position of the government will be deemed to be substantially justified 'if there is a genuine dispute . . . or if reasonable people could differ as to the appropriateness of the contested action.'" *Davidson v. Veneman*, 317 F.3d 503, 506 (5th Cir. 2003) (quoting *Pierce*, 487 U.S. at 565). The mere fact that the government lost—even if the reviewing court held it acted unreasonably or arbitrary and capriciously—does not alone demonstrate that its position was not substantially justified. *See Spawn v. W. Bank-Westheimer*, 989 F.2d 830, 840 (5th Cir. 1993); *Griffon v. U.S. Dep't of Health & Human Servs.*, 832 F.2d 51, 52 (5th Cir. 1987) ("Merely because the government's underlying action was held legally invalid as being 'arbitrary and capricious' does not necessarily mean that the government acted

---

[2] As relevant here, the EAJA states that:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

No. 16-60556

without substantial justification.").  To determine whether the government's position was substantially justified, we first look to the BIA's decision to deny the petitioner's motion to reopen and then examine the government's litigation position defending the agency action.  *See* 28 U.S.C. § 2412(d)(2)(D) ("'[P]osition of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based.").

B.

Turning first to the BIA's decision to deny the petitioner's motion to reopen, we find that the Board's decision was made when the law was unsettled and evolving in this circuit regarding equitable tolling under § 1229a(c)(7).  When the BIA denied the petitioner's motion to reopen under § 1229a(c)(7), it was unclear in the Fifth Circuit whether the statute even allowed the BIA to equitably toll § 1229a(c)(7)'s deadline.  *See Mata*, 135 S.Ct. at 2155 n.3 ("We express no opinion as to whether or when the INA allows the Board to equitably toll the 90-day period to file a motion to reopen.  Moreover, we are not certain what the Fifth Circuit itself thinks about that question.").  It was not until our holding in *Lugo-Resendez*—issued after the Board's decision— that we established that the BIA must apply equitable tolling principles to § 1229a(c)(7)'s deadline.[3]  *See Sylejmani*, 729 F. App'x at 322 ("We recognize that when the BIA issued its decision, we had not yet decided *Lugo-Resendez*

---

[3] Even in *Lugo-Resendez* we noted that "the doctrine of 'equitable tolling does not lend itself to bright-line rules.' 'Courts must consider the individual facts and circumstances of each case in determining whether equitable tolling is appropriate.'" *Lugo-Resendez*, 831 F.3d at 344–45 (first quote from *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), second quote from *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002) (per curiam)).  It is also worth noting that the petitioner did not cite *Lugo-Resendez* in his appellate briefing; he only raised its equitable tolling standard in his application for EAJA fees.

10

and thus had not set forth a particular standard for assessing equitable tolling claims.").

Thus, we cannot but conclude that the Board was substantially justified in applying Fifth Circuit precedent as it existed at the time of its decision to determine that the petitioner was ineligible to toll the statutory deadline. *Cf. Nalle v. C.I.R.*, 55 F.3d 189, 192 (5th Cir. 1995) (noting that under 26 U.S.C. § 7430's identical standard, "courts have held that petitioners had failed to show that the government's position was not substantially justified when judicial decisions on the issue left the status of the law unsettled, or when the issue was difficult or novel"). Since we find that the agency action was substantially justified, we must now look to the government's litigation position to see if it was also substantially justified. *See* 28 U.S.C. § 2412(d)(2)(D).

### C.

Like the BIA's decision not to equitably toll the statute, we must examine whether the government's litigation position defending the agency action was itself substantially justified. To recap: the substantial justification standard is not "overly stringent," *Davidson*, 317 F.3d at 506, and we must find substantial justification when the government's litigation position has a "reasonable basis both in law and fact." *Pierce*, 487 U.S. at 565. Therefore, we will briefly examine the government's arguments on appeal to determine if its position had a reasonable foundation in the shifting sands of this case's legal and factual circumstances.

The government's central argument was that the BIA did not abuse its discretion because the petitioner had not met his high burden to establish that he was entitled to equitable tolling. The government made a variety of points throughout its brief and specifically addressed and distinguished *Lugo-Resendez*. Two examples serve to demonstrate that the government's position

11

had a basis in both law and fact.  First, the government argued that allowing tolling here would conflict with the Supreme Court's conclusion in *Dada v. Mukasey* that a motion to reopen based in equitable tolling should not interfere with statutory penalties for an alien's failure to meet his voluntary departure deadline.  554 U.S. 1, 19 (2008); 8 U.S.C. § 1229c(d)(2); 72 Fed. Reg. 67674, 67680; *In re Zmijewska*, 24 I. & N. Dec. 87 (BIA 2007).  Second, the government argued that the BIA's decision was supported by indicium of congressional intent "to foreclose the Board and the courts from applying an open-ended equitable exception to the penalties for failing to depart within the time for voluntary departure" and that the Board's interpretations of the relevant statutory and regulatory provisions were entitled to substantial deference.[4] Granting the petitioner equitable tolling, the government contended, when he came to the Board with unclean hands (his failure to voluntarily depart after accepting such an arrangement previously before the Board) would undermine Congress's intent and conflict with BIA precedent.  The government's brief reflects various arguments grounded in statutory structure, legislative intent, the regulatory scheme, and the precedents of the Supreme Court, Fifth Circuit, and BIA.[5]

Based on the foregoing, we find that the government presented an argument with a reasonable basis in both law and fact addressing this "novel and difficult" issue.  *Griffon*, 832 F.2d at 53.  In *Lugo-Resendez* we acknowledged that we were setting out a new standard in this circuit and recognized that "equitable tolling does not lend itself to bright-line rules."  831

---

[4] For this argument, the government cited, *inter alia*, *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999); *Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Ruiz-Romano v. Reno*, 205 F.3d 837, 838 (5th Cir. 2000).

[5] Ultimately the panel declined to consider most of these arguments because they were not contained within the BIA's original decision.  *See Sylejmani*, 729 F. App'x at 321 n.3.

F.3d at 343, 344 (internal quotation marks and citation omitted).  We decline here to penalize the government under the EAJA for presenting arguments reasonably grounded in various sources of law attempting to aid the court in working out how *Lugo-Resendez*'s new standard should apply moving forward. *See Griffon*, 832 F.2d at 53 ("We are also mindful in this regard that the 'special circumstances' provision of section 2412(d)(1)(A) was in part designed to 'insure that the Government is not deterred from advancing in good faith . . . novel but credible . . . interpretations of the law that often underlie vigorous enforcement efforts.' [] We think the same considerations may legitimately influence to some extent our determination of whether the government is 'substantially justified' in respect to a *res nova* legal position, at least where, as here, we conceive a contrary result to be unjust." (quoting *Russell v. Nat'l Mediation Bd.*, 775 F.2d 1284, 1290 (5th Cir. 1985))).  We thus conclude that the government has met its burden to demonstrate that its litigation position—though not sufficient to save the BIA's decision—was "justified to a degree that could satisfy a reasonable person."  *Pierce*, 487 U.S. at 565.

## IV.

In the light of this evolving and uncertain legal landscape, the agency action and the government's litigation position had a reasonable basis. Although the BIA's action ultimately was held to be an abuse of discretion, the court "recognize[d] that when the BIA issued its decision, we had not yet decided *Lugo-Resendez* and thus had not set forth a particular standard for assessing equitable tolling claims."  *Sylejmani*, 729 F. App'x at 322. Accordingly, we find that the BIA's denial of the petitioner's motion and the government's defense of the agency action were substantially justified.[6]

---

[6] Because we find that the government's position was substantially justified we do not consider whether special circumstances exist that would make an award unjust.

No. 16-60556

The petitioner's opposed motion for attorney's fees and other expenses under the Equal Access to Justice Act is DENIED.